SMITH et al. v. NEW WAY LUMBER CO.

No. 10312.

Court of Civil Appeals of Texas. Galveston.

June 12, 1935.

Rehearing Denied July 18, 1935.

William McCraw, Atty. Gen., and Vernon Coe, Asst. Atty. Gen. (John T. Maginnis and Baker, Botts, Andrews & Wharton, all of Houston, of counsel), for appellants.

Snell & Aynesworth and Frank E. Mann, all of Houston, for appellee.

GRAVES, Justice.

This statement, thought to be correct as far as it goes, is quoted in substance from the brief filed here for the appellants:

"This is an appeal from an order of the District Court of the 55th Judicial District, Harris County, Texas, granting a temporary injunction restraining and enjoining defendants in the trial court (appellants here), L. A. Smith, C. V. Terrell, and E. O. Thompson, who compose the Railroad Commission of Texas, the Railroad Commission of Texas itself, Mark Marshall, Director of Motor Transportation for the Railroad Commission of Texas, L. G. Phares, Chief of the State Highway Patrol; Carl Nesbitt, Adjutant General of Texas, and all deputies, inspectors, employees and representatives of the Railroad Commission of Texas and the Director of Motor Transportation; all members of the State Highway Patrol, as well as other representatives of the law enforcement division of the Highway Department; all State Rangers and representatives of the Adjutant General's Department; all Sheriffs, deputy sheriffs, constables, deputy constables, and all police or peace officers of whatever character, and servants, agents and representatives from stopping, weighing, searching, examining, arresting, mov-

ing or otherwise molesting or interfering with certain trucks, being those owned by New Way Lumber Company and other plaintiffs in this cause, without a warrant of arrest for the driver or a search warrant duly and properly issued as provided by law, and from stopping, searching, arresting, examining, questioning, delaying or otherwise molesting or interfering with plaintiffs, or either of them, or of any driver of trucks owned by plaintiffs, S. A. Lovelady and W. S. Dunbar, or New Way Lumber Company, in order to discover any violation of article 827a of Revised Penal Code of Texas (Vernon's Ann. P. C.), or of any other law regulating the operation of motor trucks on the State Highways of the State of Texas, without a warrant of arrest for the driver, or a search warrant duly and properly issued as provided by law.

"The plaintiffs below (the appellees) alleged that they were doing a lumber business which would be made unprofitable by constant arrests, if the defendants below were not restrained from arresting plaintiffs' truck drivers. Plaintiffs further alleged that they were complying with the law regulating the use of trucks on the highways; that their trucks had been constantly delayed and their drivers harassed without warrant, and without proper cause and through malice, for which reasons the plaintiffs contended that they were entitled to injunctive reliefs in a court of equity. Plaintiffs further alleged that section 6 of article 827a of the Revised Penal Code of Texas is unconstitutional, in that it violates sections 9, 10, 13, 17, and 19 of article 1, and section 1 of article 2, and section 1 of article 5 of the Texas Constitution, and section 1 of the Fourteenth Amendment to the Constitution of the United States, and the gross weight referred to in section 6 of article 827a is indefinite and meaningless, in that no gross weight is set out in such statute.

"Appellants, by motion to dismiss and in answer, substantially alleged that the court of equity had no jurisdiction to enjoin the enforcement of the criminal law, nor the proceedings to enforce the criminal law, for the reasons that there is no direct invasion of any vested property right; that the appellees have an adequate and complete remedy at law, and therefore are not entitled to any relief from a court of equity; that there are not being, nor will be instituted a multiplicity of unfounded prosecutions, but that the appellees have been driving their trucks in violation of the law, and that the actions instituted have been for actual violations of a statute, which has been held constitutional by the Supreme Court of the United States; that complainants did not come into the court of equity with clean hands, but have been violating a constitutional and valid statute, and seek the protection of a court of equity in such violations; that complainants have never intended to abide by the seven thousand (7000) pound load limit law; that they have been driving their trucks overloaded in violation of the law, depending upon the aid and assistance of attorneys to protect them in such violations; that the right to arrest without warrant is given by the statutes and criminal courts are ordinarily left to construe and pass upon the constitutionality of criminal laws; that the inspection of trucks without a warrant to determine whether or not there are violations of the law regulating the operation of trucks upon the highways does not constitute an unreasonable search or seizure in violation of the Constitution; that the arrest without a warrant of drivers of those trucks when found to be guilty of violating the law is not unconstitutional; that complainants are operating upon the highways under a license and are subject to regulation and inspection, in the manner prescribed by the Legislature of this State.

"The trial court overruled appellants' motion to dismiss the appellees' petition, which contained pleas to the jurisdiction of the court. The court also overruled appellants' general demurrer to appellees' first amended original petition, and, after hearing evidence from both sides, entered an order against the above named officials of the State of Texas, granting the temporary injunction restraining them from doing the things above set out."

In limine, on the appeal, appellants assert (and appellees deny) that the evidence so heard below—it being furnished by the appellee's assistant general manager himself—undisputedly and conclusively showed that the appellees were operating their trucks in a commercial business for compensation or hire within the meaning of Vernon's Ann. Civ. St. art. 911b, hence were illegally therewith using the highways of Texas without a permit so to do from the State Railroad Commission, wherefore they were in no position in any event to

ask or receive from the equity powers of the courts such injunctive relief as the appealed from order awarded them; an examination into the statement of facts verifies the factual basis for this contention, the assistant general manager for the appellees, Mr. Moos, after first testifying that there was a difference in the price of the lumber delivered by them to Victoria and the delivery likewise to Amarillo, plainly disclosed that they were making a delivery charge to the purchasers of the lumber according to the weight of the truck and the distance it traveled in making the deliveries, saying in that connection this:

"Q. How do you account for that difference? A. Due to the weight and freight haul, distance; the same as railroads do.

"Q. In other words, you charge them an additional amount for the freight? A. Weight of the truck and the distance.

"Q. You charge them an additional amount then computed on the additional distance? A. Yes.

"Q. That they have to carry the load? A. Yes.

"Q. You say that you make these estimates yourself. I believe you say you made and quoted them? A. Most of them, yes. I supervise and price them.

"Q. Do you quote f. o. b. price? A. F. o. b. load? Sometimes.

"Q. How do you quote them? A. Well, we have a published price list—that is f. o. b. mills price; and, for delivered price, we take the distance. It depends on how far it is from the mill, and we add so much a thousand for the expense; sometimes $3.00 a thousand, sometimes as high as $12.00 a thousand for delivery.

"Q. So much a thousand, then take the expense from Houston or shipping point? A. Shipping point, yes.

"Q. To point of delivery? A. Yes."

Under the other facts appearing, since the appellee was a motor carrier owning and operating its own trucks in pursuit of commercial business on the nonurban highways of the state, the quoted testimony clearly made of it a contract carrier within subdivision (h) of section 1 of the cited statute (article 911b), that is, one "transporting property for compensation or hire over any highway in this State other than as a common carrier."

In the opinion of this court, this cause was therefore brought squarely within the holding of the Supreme Court of Oklahoma in Collins-Dietz-Morris Co. v. State Corporation Commission, 154 Okl. 121, 7 P.(2d) 123, 129, 80 A. L. R. 561, which construed the statute of that state, not in legal purport different in any material respect from the statute of this state, cited supra; the Oklahoma court carefully distinguished between transactions in which the goods were delivered to purchasers, after having been transported over the state's highways, at the same price asked for them at the seller's place of business, denominated class X transactions, and those in which the price obtained for the goods was greater or different at the point of delivery, after transportation over the public highways, than it was at the seller's place of business, denominated class Y transactions; the opinion summed the matter up in this brief statement: "The second question presented is more difficult, and involves a number of minor questions. There the price of the goods delivered includes a direct charge for the delivery thereof. The cost of the delivery not only is reflected in the price of the goods delivered, but the price of goods delivered is greater than the price of goods sold by the same wholesale house that are not delivered. That the title to the goods remains in the vendor until delivered is immaterial. Since the seller receives compensation for the delivery of the merchandise, we must conclude that the legislative intent, as shown by the terms of the act, was that this delivery be included in the provisions of the act."

In addition to the quoted admission of making delivery charges for the lumber sold by them, the appellees here further made no claim of having the permit from the Railroad Commission required by our civil statute, article 911b, contending in avoidance of its applicability to them and the business they were doing—as well as that also of Vernon's Ann. P. C. art. 1690b—that they were not motor carriers for compensation or hire; that the Oklahoma statute, construed supra, is dissimilar to ours, in that the disjunctive rather than the conjunctive use of the phrase "compensation for hire," instead of "compensation and hire," indicates that in our law the word "compensation" is used merely as a synonym for "hire," and has no further meaning, invoking the holding of the Ken-

tucky Court of Appeals in Kroger, etc., Co. v. City of Cynthiana, 240 Ky. 701, 42 S. W.(2d) 904, in support of that construction, along with the Oklahoma case cited supra, and these further authorities: Anderson, Clayton & Co. v. State, 122 Tex. 530, 62 S.W.(2d) 107, 113; City of Sioux Falls v. Collins, 43 S. D. 311, 178 N. W. 950; Murphy v. Standard Oil Co., 49 S. D. 197, 207 N. W. 92, 93.

Neither do the terms of the Oklahoma statute, nor any of the cases cited as being in line, sustain this answering position, it is thought; nor, in our opinion, does the additional testimony the appellees quote from their Mr. Dunbar, to the stated general purport that they charged no freight rate for making their deliveries, but merely added the actual cost of the deliveries, as nearly as it could be estimated, to the price of the lumber sold, there being no profit made on the hauling, but only on the sale, relieve them of being "motor-carriers for compensation or hire" within the terms of Vernon's Ann. Civ. St. art. 911b.

As concerns the comparative two state statutes involved, no material difference appears, the common purpose of each as to the business with which this cause has to do being plainly to make a seller who transports his goods to the buyer for a higher price as part of the consideration for the sale than he exacts for the same goods undelivered a contract carrier for compensation or hire; the test being whether or not for such expense for transportation he had to pay an additional price for the goods—not whether the seller had in fact made any profit on the transportation part of the transaction, as the appellees argue; indeed, these provisions of the Oklahoma and Texas statutes seem to us to be merely six of one and half dozen of the other, and Mr. Moos' testimony brings the cause at bar squarely within the quoted holding of the Oklahoma Supreme Court, that such transactions subject the seller to the provisions of the statute requiring a permit for such operation and the payment of license fees therefor; such being by precise analogy the position of the appellees with reference to our statute, by well-settled authority they have no vested right to the use of the highways of this state for the carrying on of such a business, hence were not entitled to the injunctive relief accorded them; Ex parte Sterling, 122 Tex. 108, 53 S.W.(2d) 294; Shupee v.

Railroad Commission, 123 Tex. 521, 73 S. W.(2d) 505; Railroad Commission v. Inter-City Forwarding Co. (Tex. Civ. App.) 57 S.W.(2d) 290; Stephenson v. Binford (D. C.) 53 F.(2d) 509; City of Newport v. Merkel Bros. Co., 156 Ky. 580, 161 S. W. 549; the Tennessee case of State v. Cummings, 130 Tenn. 566, 172 S. W. 290, L. R. A. 1915D, 274; Sumner County v. Interurban, etc., Co., 141 Tenn. 493, 213 S. W. 412, 5 A. L. R. 765; City of Texarkana v. S. W. Tel. & Tel. Co., 48 Tex. Civ. App. 16, 106 S. W. 915.

As indicated, the cases relied upon for a contrary holding are thought to be distinguishable; in the Kroger Case from Kentucky, so far as appears from the opinion of the court or the statement of facts, no specific charge for hauling the merchandise was shown to have been made by the Kroger Company, while here—without any reference to whether or not there was a profit in the transportation part of the sale—the evidence plainly does show that a specific charge was made for hauling the lumber.

In City of Sioux Falls v. Collins the same condition in effect appears, in that there is nothing indicating any additional charge for the product delivered over what there would have been if the customer had come to the bakery for it—the sole question there being whether or not one operating his truck for the delivery of bakery products to his customers was operating for hire or reward, under an ordinance relating to the licensing of vehicles for hire, and did not involve the question here presented, that is, whether or not such a charge as was admittedly made by the appellees for the hauling of their lumber would amount to a transportation for compensation or hire.

In Murphy v. Standard Oil Co., also, there was no showing of a greater or different charge being made for transported and delivered goods than for those called for by the purchaser, indeed, quite the contrary, as appears from this statement in the court's opinion: "Such products are shipped into the state in tank cars and stored in storage tanks at various points in the state; that from such storage tanks said products are delivered, by means of tanks mounted on motor trucks. * * * The evidence further shows that the price on all gas or oil sold from storage tanks and from delivery tanks is the same. If a customer wishes a quantity of gas or oil he may take

his barrel or tank to one of defendant's tanks and have it filled and haul it away, or defendant will deliver it at his home or place of business, in town or out in the country, and there is no charge made for such delivery, and these prices prevail whether such products are sold and delivered by defendant's employees, who work for wages, or by its agents, who sell and deliver on commission."

Finally, as concerns the Anderson, Clayton & Co. v. State Case, there likewise appears nothing showing whether or not the trucks were being operated for compensation or hire, or whether any charge was made for delivering the company's cotton over and above what would have been, had the same been purchased at its warehouse; in fact, to the question of whether or not Anderson, Clayton & Co. was hauling for compensation or hire, which was the third question certified to the Supreme Court for answer, this response was made: "The third question certified presents a question of fact and not of law. The Supreme Court's appellate jurisdiction does not extend to fact questions, such as sufficiency of evidence to support the judgment, whether invoked by certified questions or application for writ of error. [Citing authorities.] Therefore the Supreme Court is without jurisdiction to answer this question."

Furthermore, such a question as was involved in the Anderson-Clayton Case—that is, as to whether or not leasing trucks and paying so much for the use thereof was a violation of the law—would seem to be materially different anyway from what is presented here, since there are no lease contracts involved in these transactions, but simply the facts directly told by the appellee's own assistant manager, which plainly established that they were charging more for their goods delivered, and that by reason of having transported them themselves, than they were for them undelivered.

Wherefore, it is held that no authorities contrary to these conclusions have been presented that are based upon the legal equivalent of the same state of facts.

If the holding be sound that the appellees are subject to the pains and penalties of Vernon's Ann. Civ. St. art. 911b, it would obviously be a work of supererogation to here dispose of the further contentions—so much discussed in the briefs and arguments—over whether or not Penal Code, article 827a is either applicable or valid, hence it will not be done.

It follows that, the appealed from order having been improvidently issued, the judgment should be reversed, and the temporary injunction dissolved; that order has already been entered.

Judgment reversed.

Temporary injunction dissolved.