[Civ. No. 5918. Third Appellate District.—October 25, 1937.]

HUGHSON CONDENSED MILK COMPANY (a Corporation), Respondent, v. STATE BOARD OF EQUALIZATION et al., Appellants.

U. S. Webb, Attorney-General, and R. L. Chamberlain, Deputy Attorney-General, for Appellants.

McClymonds, Wells & Wilson, Elwood Murphey and Thomas B. Scott for Respondents.

PLUMMER, J.—The plaintiff in this action had judgment against the defendants enjoining and restraining them from canceling the registration certificates for plaintiff's trucks. From this judgment the defendants appeal.

The Hughson Condensed Milk Company is a manufacturing milk concern operating a plant in Stanislaus County for the production of milk products, etc. As an incident to the conduct of its plant it maintains a number of trucks which pick up milk at the ranches of producing dairymen, and transports the same to its plant where the milk is processed.

The defendants and appellants, as members of the State Board of Equalization, Motor Vehicle Department, and agents, have attempted to impress upon plaintiff the status of one who is transporting property for hire or compensation, within the meaning of the California Motor Vehicle Transportation License Tax Act (Stats. 1933, p. 928, as amended in 1935). Plaintiff resisted such classification, and the defendant thereupon gave notice that the registration certificates for plaintiff's trucks would be suspended and plaintiff's trucks barred from the highway. This action was filed to restrain such proceeding, and the plaintiff had judgment as prayed for.

Upon this appeal two issues are presented:

1st. Does section 9 of the act bar an equitable proceeding such as the instant case?

2d. Is the act applicable to one who, in good faith, and not for the purpose of evading a tax, but as an incident to, and a vital part of its business, purchases milk from dairymen at the place of production, and thereafter transports the milk so purchased from the place of production to its plant at Hughson, where, as stated, it is thereafter processed?

The plaintiff in the action, as shown by the record, does not transport any milk in its trucks belonging to any other than to itself. The court found upon substantial testimony that the purchase of the milk was made at the place of production, and that the title thereto passed to the plaintiff immediately upon receiving the same from the dairymen producing the milk at the place of production.

The appellants contend first: That the provisions of section 9 of the act referred to is a complete bar to this action; that section 9 provides in substance that no injunction or writ of mandate or other legal or equitable process shall ever issue in any suit, action or proceeding in any court, against this state or against any officer thereof, to prevent or enjoin the collection under this act of any license tax sought to be collected, etc. The section further provides that one paying the tax may pay the same under protest, and thereafter bring an action against the state treasury in the county of Sacramento for the recovery of the tax so paid under protest. A number of authorities are cited in support of the proposition that such a provision of law is valid, and that no injunction to restrain the collection of the tax should issue, but that the person paying the tax is afforded a speedy and adequate remedy at law by paying the tax under protest and thereafter instituting proceedings for the recovery of the same. That this position of the appellants is untenable readily appears from the fact that this action is not one to restrain the collection of a tax. It is simply a proceeding intended, and having for its purpose the restraining of certain officers from canceling truck registration certificates, and thereby barring the plaintiff's trucks from the highway.

The License Tax Act, *supra*, does provide for the manner of collecting the tax, and authorizes suits for that purpose, as set forth in section 8 thereof. Our attention is also called to section 526 of the Code of Civil Procedure, setting forth

that an injunction cannot be granted to prevent the exercise of a public or private office in a lawful manner, by the person in possession, etc. That of course presents the question of whether the proceeding in this action is a lawful one, and whether the action taken is taken in a lawful manner. This question will be answered later on. That any other proceeding on the part of the plaintiff would involve a multiplicity of suits and would be almost prohibitive, as the different sections of the act set forth so many different factors that compliance therewith requires the expenditure of considerable sums of money to different departments of the state government.

The operator is required to pay an original license fee to the State Board of Equalization; required to pay a certain fee to the Department of Motor Vehicles for special plates; and required to pay to the State Board of Equalization each month a tax imposed upon gross receipts. It does not require citation of authorities to show that a multiplicity of suits would necessarily follow.

The Supreme Court, in the case of *Las Animas etc. Land Co.* v. *Preciado,* 167 Cal. 580 [140 Pac. 239], sets forth the doctrine which is applicable here if the holding of the trial court that the action of the defendants was without authority of law is upheld. Thus, if the defendants are attempting to bring about the cancellation of the registration certificates for the plaintiff's trucks, without authority of law, such a proceeding will be restrained.

Again, if the defendants are seeking to deprive the plaintiff of a property right or privilege without due process of law, equity will interpose. (*Pierce* v. *City of Los Angeles,* 159 Cal. 516 [114 Pac. 818].) Other cases might be cited, but by reason of the fact that this is not an action to restrain the collection of the tax, and does not in any way interfere with the rights of the parties interested to bring a suit under section 8 of the act, but is only a collateral proceeding, further consideration of the appellants' first objection need not be had.

The merits of the controversy present a question upon which the courts of this state have not expressed any opinions or rendered any decisions. The act under consideration purports to levy a license tax upon anyone who transports persons or property for hire or compensation, either directly

or indirectly. Subdivision A of section 1 of the act reads: "The word 'operator' shall include all persons, firms, associations and corporations who operate motor vehicles upon any public highway in this state, and thereby engaged in the transportation of persons or property for hire or compensation, either directly or indirectly."

The appellants attempt to draw a line of demarkation between the word "hire" and the word "compensation", and argue that if money is saved by reason of the manner of the appellants' conduct of its business, it is receiving compensation. It will be noted that the subdivision which we have quoted uses the words "hire or compensation, either directly or indirectly", from which it would appear that a correct deduction from the language used is to the effect that the words, "either directly or indirectly" refer as well to the word "hire" as to the word "compensation". There appears to be nothing in the act which would lead to the conclusion that either the word "hire" or the word "compensation" was inserted in the act with the intent to give either word a meaning other than that ordinarily conveyed by such words. The word "compensation" is defined in 12 C. J., beginning on page 229, as follows: "An act which a court orders to be done, or money which a court orders to be paid, by a person whose acts or omissions have caused loss or injury to another, in order that thereby the person damnified may receive equal value for his loss, or be made whole in respect of his injury; a consideration; the consideration or price of a privilege purchased; an equivalent in money for a loss sustained; an equivalent given for property taken or for an injury done to another; the giving back an equivalent in either money which is but the measure of value, or in actual value otherwise conferred; the rendering an equivalent in value or amount; indemnification; making amends; payment of damages; a recompense in value; a recompense or reward for some loss, injury or service, especially when it is given by statute; remuneration for the injury directly and proximately caused by a breach of contract or duty; remuneration or satisfaction for injury or damage of every description; that return which is given for something else; that which is necessary to restore an injured party to his former position. The term etymologically suggests the image of balancing one thing against another, its primary signification being equivalence, and the

secondary and more common meaning something given or obtained as an equivalent.''

In *Kroger Baking Co.* v. *Cynthiana,* 240 Ky. 701 [42 S. W. (2d) 904, 80 A. L. R. 574], the meaning of the word ''compensation'' is set forth, and where, as here, the same contention was made and overruled by the court, to wit, that compensation would consist in the difference in the amount between what it costs to operate the trucks in the performance of the service rendered, and what it would cost to hire others to do the same. This contention was overruled by the court in the following language: ''Its'' (compensation) ''close connection with the word 'hire' would seem to indicate that it was the intention and purpose, in appropriating the word 'compensation', to refer to the *reward* received by the one who was hired from the one who hired him, and that it was not the intention to broaden the true definition of *compensation* so as to include all benefits, advantages or profits that might accrue to one who operated his own trucks instead of hiring and compensating others to perform the same services.'' The court also said: ''Compensation in law primarily applies to a transaction between two or more persons, and does not enter into or arise from a unilateral transaction, purpose or policy of one person alone in the prosecution of his individual enterprise or undertaking.''

The actual money paid to the dairymen is based upon the butterfat content thereof, and is governed by the price of butterfat in San Francisco and Los Angeles. The purchase price or the amount to be paid is determined by a process which ascertains the quantity of butterfat contained in the milk purchased. However, this does not affect the passing of the title.

In the case of *Boessow* v. *Johnson,* 10 Cal. App. (2d) 578 [52 Pac. (2d) 505], the court said: ''Where only the price to be paid is to be determined, it becomes a matter of intention of the parties as to when the title passes.'' (And the testimony in the record in that case all being to the effect that title passed upon taking possession of the milk, it must be held that the finding of the court in this particular is not sustained by the testimony.) Here, the testimony likewise is all to the effect that the title passed immediately upon the plaintiff taking possession of the milk, and thereafter it was transporting its own property. The record shows that the

trucks belonging to the plaintiff were sent around to the different dairymen, as we have stated, and the milk picked up at the point of production. The record also shows that some milk was delivered by the producers, and they were allowed the sum of 2½ cents per pound for butterfat for hauling the same.

The appellants contend that the plaintiff is operating its trucks for compensation indirectly. The appellants concede that no one pays anything directly to the plaintiff as compensation for operating its trucks, but argues that its compensation comes indirectly, due to the fact that it saves the cost of hauling when it goes into the country and picks up and hauls to its own plant the milk it there processes, and that this is compensation indirectly. The cost of the operation of the trucks is all carried into the overhead operations of the company, and there is not a word in the record indicating that it has gained any monetary advantage by its manner of conducting its business.

The reply of the plaintiff to the contention of the appellants is that its manner of conducting its business and collecting the milk was adopted long prior to the passage of the License Tax Act, *supra,* as a matter of convenience and for the purpose of securing the milk produced by the dairymen at the earliest possible moment after its production and while the milk would be in the best condition for processing. Whether its costs are greater or less than the mere hiring of others to perform this service is not shown by the record, nor is there anything in the record to show that it has saved a dollar in money by the operation of its own fleet of trucks. We may add here that the record shows that the plaintiff paid the same price for the milk collected, irrespective of the distance traveled by the trucks in collecting the same.

The first case relied upon by the appellants to sustain their contention is that of *Smith* v. *New Way Lumber Co.,* (Tex. Civ. App.) 84 S. W. (2d) 1104. An examination of that case discloses its inapplicability to the question here presented. The lumber company maintained its own trucks, and made delivery to the purchasers of lumber, using its own trucks to do so, but in selling its lumber and delivering the same it charged a different price for lumber delivered at its lumber-yards and lumber delivered to the purchaser by its own fleet of trucks. Thus, on the face of the record it

shows that the lumber company was receiving a compensation for the delivery of the lumber to purchasers away from its lumber-yards. Further comment on this case is unnecessary.

The second case submitted for our consideration is that of *West et al.* v. *Western Maryland Dairy*, 150 Md. 641 [135 Atl. 136]. In that case the question of title was involved, as well as the price differential. The court in that case, while holding that the title had passed, said it was immaterial, in that the company was a common carrier, and therefore liable for the tax under the act there being considered.

In the case of *Forsyth* v. *San Joaquin Light & Power Corp.*, 208 Cal. 397 [281 Pac. 620], the court, in considering this case, used the following language: "There was no showing whatever that the Dairy Company had ever carried or solicited transportation of any milk except that which it had purchased from the purchasers"—(evidently meaning "producers"); "nor was there any proof that it had held itself out to the general public as a carrier of milk, or of any other commodity. It is difficult, therefore, to understand, in view of the great unanimity of authority upon this subject, how the court could have held that the Dairy Company, under such circumstances, was a common carrier." Comment by us on the Western Maryland Dairy case seems to us unnecessary; nor do we need to consider the cases cited relying thereon.

Appellants refer to the recent case of *Ex parte Bush*, 6 Cal. (2d) 43 [56 Pac. (2d) 511]. A reference to the opinion in that case shows that the Supreme Court expressly refused to express any opinion as to the liability of one who transported his own property under the License Tax Act of 1933.

Where only the price to be paid remains to be determined, it becomes a matter of intention of the parties as to when title passes. (55 C. J., p. 537, sec. 337 et seq.; *Boessow* v. *Johnson, supra; Welch* v. *Spies*, 103 Iowa, 389, 392 [72 N. W. 548, 549]; sec. 1738, Civ. Code.) That section reads as follows: "Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred. For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case."

In addition to what we have said relating to the provisions of the License Tax Act of 1933, we may add that the tax provided for by the act is to be levied upon the gross receipts from the operation of the motor vehicles engaged in the transportation. As we have stated, the record shows no gross receipts in its transportation of the milk purchased by the plaintiff. The plaintiff has in fact received nothing by way of a monetary compensation or property compensation either directly or indirectly, in maintaining its fleet of trucks and picking up milk from producers. The record shows only an expense carried in overhead, and that its purpose in conducting the manner of its operation has been the same for many years, and is founded upon convenience and securing of better quality of the product purchased.

With no showing that any saving is accomplished by maintaining its own fleet of trucks, we cannot very well find any foundation for the appellants' contention "that a dollar saved is an indirect dollar received by way of compensation".

The following authorities, some of which we will further consider, lead us to the conclusion that one hauling his own goods is not transporting goods for hire or compensation, and especially is this true where there is no differential in the price paid to the producer for the goods purchased: *People* v. *Montgomery,* 92 Colo. 201 [19 Pac. (2d) 205]; *City of Sioux Falls* v. *Collins,* 43 S. D. 311 [178 N. W. 950]; *Murphy* v. *Standard Oil* Co., 49 S. D. 197 [207 N. W. 92]; *Griffin* v. *Murphy,* 51 S. D. 50 [211 N. W. 804]; *Kroger Baking Co.* v. *Cynthiana, supra*; *State* v. *Manhattan Oil Co.,* 199 Iowa, 1213 [203 N. W. 301]; *Rountree* v. *State Corporation Commr.,* 40 N. M. 152 [56 Pac. (2d) 1121]; *Elkins* v. *Schaaf,* 189 Wash. 42 [63 Pac. (2d) 421].

In *People* v. *Montgomery, supra,* the court had under consideration a License Tax Act purporting to levy a tax upon persons transporting property of others for compensation or hire. It will be noted that the only difference in the act under consideration reads: "hire or compensation". The transposition of the words, however, we think does not indicate any intention to give either word a different meaning than that which ordinarily attaches. We find the following language in the opinion touching upon the principle involved herein, to wit: "The finding that defendant is a carrier for hire is a conclusion of law wholly unsupported by any proper

findings of fact or any evidence in the record. In order to support the conclusion that defendant is a carrier for hire, there must be' evidence showing that defendant is equipped for carrying persons or property, and that it is engaged in carrying, or offers to carry persons or property, other than itself or its own property, for a compensation in some form. The phrase 'carry for hire' necessarily implies a contractual relation between two parties and the legislature cannot, by mere legislative fiat, make a party a carrier for hire who never carries or offers to carry anything but himself or his own property, any more than it can make black white, or white, black. A person cannot hire himself or pay himself.''

In the Kroger case, *supra,* the plaintiff owned a chain of stores and operated its own trucks which it used exclusively in delivering goods from its central warehouse to its different stores. The same contention was made there that is made here, that the company was at least operating for compensation, that is, it saved the difference between what it cost the grocery company to operate its trucks, and what it would have cost them to have hired others to perform the same services in the same way. The court declined to adopt such contention, and used the language which we have heretofore quoted to the effect that the term ''compensation'', in law, primarily refers to a transaction between two or more persons, and does not enter into or arise from a unilateral transaction.

In *Rountree* v. *State Corporation Commr., supra* (a very recent case), it was held, quoting from the syllabus, as follows: ''Persons engaged in buying merchandise and transporting it for sale to customers at distant places, without fixing quantity and price in advance of transportation, held not engaged in transportation of property for compensation, so as to be subject to regulation as a contract motor-carrier under statute, where cost of transportation was charged to overhead expenses, and no specific charges were made for transportation.'' It was there further said that compensation for hire must necessarily be paid by one who hires, so in transporting his own goods a carrier does not come within the statutory definition of ''contract motor-carrier for hire'', as no one hires him. It was there further said that the act, when considered, which is similar to ours, indicates that the legislature intended to give to the word ''hire'' the sense and meaning of ''compensation''.

In *Elkins et al.* v. *Schaaf et al.*, 189 Wash. 42 [63 Pac. (2d) 421], the Supreme Court of Washington defines the term "compensation". We quote from the syllabus: "Compensation, within statute defining 'special carrier' as person engaged exclusively in transportation . . . in vehicle specially equipped for handling such commodities and operating for compensation, means compensation pursuant to contract or agreement for trucking." In that case the respondents were doing their own trucking. The use of the road was an ordinary use incidental to carrying on their business.

In *Collins-Dietz-Morris Co.* v. *State Corporation Commission*, 154 Okl. 121 [7 Pac. (2d) 123, 80 A. L. R. 561], the Supreme Court of Oklahoma had before it the same question we are now considering. Two classes of service were performed by the company, one was the transportation without charge to the customer; the second was the direct charge to customer for cost of transportation. The first transaction to which we have referred was called "Class X"; the second "Class Y". No charges were made against the customers under "Class X", but the expense of operating trucks was carried into overhead. The court held that under such circumstances the transactions coming under "Class X" were not transactions for compensation, and no license could be collected on account thereof. Under "Class Y", where there was compensation, the company was liable under the License (Tax) Act. This case and the annotations thereto found in A. L. R., we think conclusive authority for supporting the conclusion that the License (Tax) Act of 1933 does not apply to persons transporting their own property. The other cases which we have cited but not analyzed support the same doctrine. We do not deem it necessary to cite cases to the point that statutes levying taxes or licenses are not to be construed beyond the plain import of the language used by the legislature.

The judgment of the trial court is affirmed.

Pullen, P. J., and Thompson, J., concurred.