[Civ. No. 12439. First Dist., Div. Two. Apr. 6, 1943.]

CONSOLIDATED ROCK PRODUCTS CO. (a Corporation), Appellant, v. STATE OF CALIFORNIA et al., Respondents.

Latham & Watkins and Richard W. Lund for Appellant.

Earl Warren, Attorney General, H. H. Linney, Assistant Attorney General, and Adrian A. Kragen, Deputy Attorney General, for Respondents.

DOOLING, J. pro tem.—Plaintiff is a corporation engaged in the business of selling rock, sand, gravel and ready-mixed concrete in Southern California. It owns and operates trucks in which such materials are delivered to its purchasers. It has a small cash and carry business but the materials constituting the greater part of its sales are delivered in its own trucks, and in such cases title passes to the purchasers upon delivery. Its sale prices at the plant are lower than its sale prices when materials are delivered in its trucks, the differ-

ence in price being attributable to the hauling. The territory of Southern California is divided by the rock and gravel companies into zones, and transportation charges to the various zones are established. On its smaller sales the difference between the price of materials delivered at the plant and those conveyed to the purchasers in its trucks is regulated according to these zones. On larger sales an addition is always made to the price of materials at the plant where they are conveyed to the purchasers in plaintiff's trucks. During the period from September, 1935, to June, 1938, covered by this action, plaintiff made many sales to the United States Government, the prices of which were determined by competitive bid. In making such bids plaintiff took into consideration the cost of hauling the materials in its own trucks.

Plaintiff paid under protest a tax assessed for its hauling charges on all transactions in the period mentioned in which deliveries were made to the purchasers in plaintiff's trucks, where the sales were not subject to the sales tax, *i.e.* sales made for resale and those made to the United States. This action was brought to recover back the tax so paid, and from a judgment for defendants plaintiff has prosecuted this appeal.

Plaintiff thus states the questions presented by it on this appeal:

"I. Was plaintiff in delivering rock, sand, gravel and ready-mixed concrete to its vendees in trucks owned and operated by it, title to the materials passing to the vendees at the point of delivery, where, though its delivered prices were in general in excess of its call-for-at-the-plant price, its quotations, bids, contracts and invoices uniformly were in terms of a single stated price for delivered materials and did not indicate in any way that any part of the price represented a charge for delivering the materials, engaged in 'transportation for hire or compensation' under the California Motor Vehicle Transportation License Tax Act for the period from September 1, 1935 to June 30, 1937?

"II. Was the plaintiff under such circumstances 'making a specific charge for such transportation' under said Act as amended on July 1, 1937, for the period from July 1, 1937 to June 30, 1938?"

Prior to July 1, 1937, the Motor Vehicle Transportation License Tax Act (Stats. 1933 p. 928; Deering's Gen. Laws, 1933, Act 5130d) imposed a tax of 3 per cent of the gross

receipts from the operation of motor vehicles by "operators" and in section 1 (a) defined the term as follows:

"The word 'operator' shall include all persons, firms, associations and corporations who operate motor vehicles upon any public highway in this State and thereby engage in the transportation of persons or property for hire or compensation, either directly or indirectly."

Specifically the question here presented is whether a merchant transporting his own goods for delivery to a buyer is engaged in "the transportation of . . . property for hire or compensation, either directly or indirectly," where he adds a charge for such transportation to the selling price of the goods.

The use of the qualifying adverb "indirectly" gives the definition a very sweeping character, and were the question a completely novel one we would have no hesitation in holding that in such transaction the merchant was transporting property for compensation, at least indirectly. True he is not making a transportation charge as such (*i.e.* directly), but the result is no different than if he were, since the charge is added to the selling price of the goods and is thereby collected as effectively, although indirectly. There is nothing in the decided cases which leads us to change this view.

Plaintiff argues, despite the sweeping character of the definition, that the construction of the section should be controlled by certain decisions from other jurisdictions and by the decision of the third division of the District Court of Appeal in *Hughson Con. Milk Co.* v. *State Board of Equalization*, 23 Cal.App.2d 281 [73 P.2d 290]. Turning our attention to the Hughson case, it is admitted by plaintiff that it is distinguishable on its facts. In that case the plaintiff operated a plant for the processing of milk products. It maintained a number of trucks for collecting milk from producing dairymen and paid the dairymen a lower price for milk collected by its trucks than for milk delivered by dairymen to its plant. An attempt was made to collect a tax under this statute upon its savings in the price paid for milk when collected in its own trucks. In the Hughson case the court correctly pointed out that while the plaintiff made a saving in the price paid for milk hauled in its own trucks, it received nothing from anyone by way of hire or compensation, either directly or indirectly. This is emphasized at pages 287-8 where the court said:

"The appellants concede that no one pays anything directly to the plaintiff as compensation for operating its trucks, but argues that its compensation comes indirectly, due to the fact that it saves the cost of hauling when it goes into the country and picks up and hauls to its own plant the milk it there processes, and that this is compensation indirectly. The cost of the operation of the trucks is all carried into the overhead operations of the company, and there is not a word in the record indicating that it has gained any monetary advantage by its manner of conducting its business. . . . We may add here that the record shows that the plaintiff paid the same price for the milk collected, irrespective of the distance traveled by the trucks in collecting the same.

"The first case relied upon by the appellants to sustain their contention is that of *Smith* v. *New Way Lumber Co.*, (Tex. Civ. App.) 84 S.W.2d 1104. An examination of that case discloses its inapplicability to the question here presented. The lumber company maintained its own trucks, and made delivery to the purchasers of lumber, using its own trucks to do so, but in selling its lumber and delivering the same it charged a different price for lumber delivered at its lumberyards and lumber delivered to the purchaser by its own fleet of trucks. Thus, on the face of the record it shows that the lumber company was receiving a compensation for the delivery of the lumber to purchasers away from its lumber-yards. Further comment on this case is unnecessary."

It appears from this quotation that the court in the Hughson case not only recognized clearly that the question before it was entirely different from the question presented in the case here on appeal, but in the Texas case, not distinguishable from the one now before us, it found "on the face of the record . . . that the lumber company was receiving compensation for the delivery of lumber away from its lumber yards." While there is some language in the Hughson case that tends to support plaintiff's argument here, in view of the issue before the court in that case we regard it as dictum not binding us.

The question here presented came squarely before the Supreme Court of Texas on error to the Court of Civil Appeals in *New Way Lumber Co.* v. *Smith*, 128 Tex. 173 [96 S.W.2d 282] (the same case in which the opinion discussed in the above quotation from the Hughson case was rendered by the

Court of Civil Appeals). In that case the definition referred to persons owning or operating motor vehicles "used in transporting property for compensation or hire over any public highway." That court said at page 287 [96 S.W.2d ]:

"Under the facts stated here the carrying of lumber owned by the company in its own trucks does not exempt it from the provisions of this law. This is not a case . . . where the price of the goods delivered is the same as those undelivered. On the contrary, it is clearly a case where the price of the lumber includes a direct charge for the delivery thereof. The carrying charge is based directly on the distance traveled and the weight of the truck. Since the company receives compensation for the delivery of the lumber, it clearly appears that the trucks used come under the definition of a 'contract carrier,' and are subject to the provisions of article 911b."

In that case, as in the one here, a charge for hauling, as noted in the quotation from *Hughson Con. Milk Co.* v. *State Board, supra,* was added to the selling price of the goods.

While the question before us was expressly reserved in *In re Bush,* 6 Cal.2d 43 [56 P.2d 511], as not necessary to the decision of the question then before the Supreme Court, the court in that case did say at page 55 that "the title of the act hereinbefore quoted is sufficiently broad, in our opinion, to cover even the transportation of one's own property upon the highway if compensation is received therefor." The title is not as broad as the definition of operator above quoted in that it omits the qualification "either directly or indirectly" and reads: "An act imposing a license fee or tax for the transportation of persons or property for hire or compensation" etc.

Plaintiff also relies upon the following cases from other jurisdictions: *Kroger G. & B. Co.* v. *City of Cynthiana,* 240 Ky. 701 [42 S.W.2d 904]; *Murphy* v. *Standard Oil Co. of Indiana,* 49 S.D. 197 [207 N.W. 92]; *Sioux Falls* v. *Collins,* 43 S.D. 311 [178 N.W. 950]; *State* v. *Manhattan Oil Co.,* 199 Iowa 1213 [203 N.W. 301]; *People* v. *Montgomery,* 92 Colo. 201 [19 P.2d 205]. The first three of these cases were discussed and distinguished in the intermediate court's opinion in *Smith* v. *New Way Lumber Co.,* (Tex. Civ. App.) 84 S.W.2d 1104 at 1107. As pointed out in that opinion these three cases dealt with the very different situation where

nothing was added to the price of the goods when delivered by the seller. This is equally true of *State* v. *Manhattan Oil Co., supra,* the statement of facts in that case showing "that in making its sales the defendant company delivers the products without any specific delivery charge"; and in *People* v. *Montgomery, supra,* the court said at page 206: "Nor does it appear that Montgomery charged or received either directly or indirectly any identifiable or specific amount to cover the cost of transportation."

Some of these cases do state that "hauling for hire" contemplates hauling another person's property and not one's own. Granting that those words standing alone should be so construed, our act is much broader, covering as it does "transportation of property for hire or compensation, either directly or indirectly."

There is no more reason why the noun "compensation," which is a broader term, should take its color from the noun "hire" than there is that "hire" should take its color from "compensation." ▮ The Legislature is not to be presumed to have used any word idly and a statute should be construed to give effect to every word used. (23 Cal.Jur. 758.)

▮ We are satisfied that one who transports goods for sale and adds the transportation charge to his selling price is transporting those goods for compensation, at least indirectly.

▮ Plaintiff makes some point of contemporaneous construction by the State Board of Equalization. Where a statute is clear, as we think this one, contemporaneous construction cannot be looked to. (*Montgomery* v. *Board of Administration,* 34 Cal.App.2d 514 [93 P.2d 1046, 94 P.2d 610]; *Morris Plan Co.* v. *Johnson,* 37 Cal.App.2d 621 [100 P.2d 493].)

▮ Finally plaintiff cites an isolated sentence by Keesling and Traynor (now Mr. Justice Traynor) from an article on "The Scope and Nature of the California Income Tax," 24 Cal.L.Rev. 493, in which the statement appears that by the act in question the Legislature imposed "a gross receipts tax on contract truck operators to equalize the tax on common carrier highway transportation companies." No great weight can be attached to a general statement in an article on another subject, which obviously was not intended

to be definitive. The same comment equally applies to plaintiff's citation to Stockwell Studies in California State Taxation, 1910-1935, page 106. ▆▆▆ Were any further comment necessary it has been supplied by our Supreme Court in *In re Bush, supra,* 6 Cal.2d at 49:

"Compensation for transportation service of either common or private contract carrier is direct compensation, and the very fact that the act expressly defines an operator as one who operates a motor vehicle for compensation, either directly or *indirectly,* supports the conclusion that the act was intended to have a wider application than to carriers alone."

The suggestion that the contracts with the United States resulted from competitive bidding is answered by the fact that in making such bids plaintiff always took into account the cost of hauling.

We are satisfied that for the period prior to July 1, 1937, the tax was properly collected.

In 1937, section 1(a) of this statute was radically amended. (Stats. 1937, p. 1919; Deering's Gen. Laws, 1937, Act 5130d.) As so amended the definition was changed to read:

"The term 'operator' shall include all persons engaging in the transportation of persons or property for hire or compensation . . . upon any public highway in this State, either directly or indirectly, but shall not mean nor include the following:

"(1) Any person transporting his own property in his own motor vehicle; provided, however, that any such person making a specific charge for such transportation shall be deemed to be an 'operator' hereunder."

▆▆▆ Plaintiff in this case being a "person transporting his own property in his own vehicle" is expressly excluded from this definition of the term "operator," unless it can be said that in collecting a greater price for delivered goods it is "making a *specific* charge for such transportation."

Plaintiff's position is that a "specific charge" in this amendment means a charge specified to be for the transportation of the goods transported, and does not include an addition to the selling price. Defendants' position is that a "specific charge" means no more than an identifiable charge, and hence is as broad as the section before its amendment, since if "specific charge" is to be given this meaning it adds nothing

to the meaning of the words "compensation . . . indirectly" as they have been construed above.

■ Some meaning should be attributed to the amendment if possible, since the Legislature is not to be assumed to have amended the statute from mere caprice. (*Loew's Inc.* v. *Byram,* 11 Cal.2d 746 [82 P.2d 1]; *Estate of Todd,* 17 Cal.2d 270 [109 P.2d 913].) Clear meaning can only be given to the amendment in this case by the acceptance of the construction suggested by plaintiff.

■ Further support for this construction, if any be necessary, is found in the statutory history of the amendment. Two bills were introduced at the 1937 session to amend the statute in question, S.B. 773 and S.B. 953. By S.B. 773 as originally introduced section 1(a) would have read:

"The word 'operator' shall include all persons . . . who operate motor vehicles upon any highway in this State and engage in the business of transporting persons or property for hire or compensation, either directly or indirectly, and shall exclude all persons . . . hauling their own products, goods, wares or merchandise either directly or indirectly."

This definition would have had the result of confining the tax to public and private contract carriers and would have specifically excluded all merchants making deliveries in their own motor vehicles.

S. B. 953 as originally introduced made no substantial change in section 1(a). This section in S.B. 953 was later amended to exclude in the definition "any person . . . who makes no specific charge or receives no differential in price for the delivery of his property. . . . "

As so amended the definition would clearly have included the transportation of plaintiff's products since plaintiff receives therefor "a differential in price." It also shows that at that stage the Legislature recognized a distinction between the words "specific charge" and "differential in price."

Finally both acts were amended to the language of the definition as finally adopted and the words "differential in price" were eliminated.

At this point when both bills came before the Senate the Senate Journal, 52d Sess., p. 3170 shows the following statement by Senator De Lap, the author of S.B. 773:

"Senate Bill No. 773, as amended by the Assembly on May 21st, and 26th, is now written into Senate Bill No. 953.

"As amended, the farmer, the merchant, and the cooperative associations are excluded from the Transportation License Tax Act when they are transporting their own goods in their own vehicles, even though a differential in price exists between the farm, or the merchant's place of business, and the point of delivery.

"However, in the case of a merchant who wishes to add a specific charge for transportation, the 3 per cent transportation tax would apply to such charges."

If the words "specific charge" were otherwise ambiguous this legislative history clearly indicates their true meaning as intended by the Legislature. (*Sato* v. *Hall,* 191 Cal. 510, 519 [217 P. 520].) We conclude that for the period after July 1, 1937, the tax was illegally collected from plaintiff.

The judgment is reversed with directions to the trial court to amend its findings in accordance with this opinion and to enter judgment thereon for defendants as to the taxes collected for transactions occurring prior to July 1, 1937, and for plaintiff for those collected for transactions since that date.

Nourse, P. J., and Spence, J., concurred.