[Civ. No. 10263. Third Dist. Mar. 14, 1962.]

RHODES & JAMIESON, LTD., et al., Plaintiffs and Respondents, v. THE CALIFORNIA STATE BOARD OF EQUALIZATION, Defendant and Appellant.

[3] *Henry* v. *City of Los Angeles, ante,* p. 299 [20 Cal.Rptr. 440] 2d Civil No. 25188, decided by this court this day.

344

Stanley Mosk, Attorney General, Ernest P. Goodman, John J. Klee, Jr. and Harry W. Low, Deputy Attorneys General, for Defendant and Appellant.

Nebecker, Stoops & Hoge and Dale I. Stoops for Plaintiffs and Respondents.

PIERCE, J.— The question on this appeal is whether a buyer who hauls purchased cement in his own truck from a place of manufacture to place of use and receives a credit from the seller in an amount (fixed by the latter) based upon what the seller regards to be the buyer's cost of transportation is making a "specific charge for transportation" (which makes the transaction taxable) or is merely receiving a "price differential."

The trial court held it was the latter and that the transaction was not taxable under the California Motor Vehicle Transportation License Tax Law. We agree with that conclusion.

Said law imposes a license tax measured by the gross receipts (Rev. & Tax. Code, § 9651) of operators of motor vehicles for hire or compensation for the transportation of persons or property upon any public highway in this State, either directly or indirectly (Rev. & Tax. Code, § 9603, subd. (a)), but section 9603.3, subdivision (a) of said code excludes from the definition of an "operator": .

" (a) Any person transporting his own property in a motor vehicle owned or operated by him unless he makes a *specific charge* for the transportation . . . ." (Emphasis added.)

Respondents, who sell cement in the Bay area, purchase their product from various manufacturers in Northern California. All of these manufacturers have adopted a sales policy known as "variable mill prices," under which, to meet competition and overcome the advantage otherwise enjoyed by rival cement plants located closer to consumer markets, a credit is allowed by the seller on the price delivered at mill. This credit, fixed *by the seller* is nevertheless determined by, and varies in proportion to, the weight of the product and the distance from the mill to the ultimate delivery point. Thus, in effect, the seller absorbs *what he deems to be* the transportation costs. The credit applies only if the buyer hauls in his own trucks. But if the cement is hauled by a contract carrier the seller pays the latter's bill. Under the facts peculiar to this case, the invoices set forth the credit as a separate item, the problem in subtraction being performed on the face of the invoice. Appellant board decided to, and did, tax the buyer under the law above mentioned. In cases where the invoices did not separately show the credit, no tax was imposed. Respondents sued for a refund—and in the meantime also promptly persuaded their sellers to perform their arithmetic elsewhere than on the invoice. Since then no tax has been assessed. The logic of a position whereby taxability depends on the piece of paper on which a computation is made eludes us. ▆ We agree with the trial court's well-reasoned opinion in which it is stated:

"It appears to this Court that the action of the State in imposing the tax here was based on a bookkeeping procedure adopted by the manufacturer, a system over which the plaintiff had, of course, no control. The mere fact that the manufacturer in its billing elected to set forth a so-called freight allowance to reduce the gross price rather than billing on the basis of an established price differential does not justify the defendant in determining that the plaintiff made a specific charge and hence, became liable for the tax."

▆ Moreover, a "credit" is not a "charge." It is the opposite of a "charge." Webster's Third New International Dictionary (unabridged) defines "charge" (in the sense to which we refer to it here) as "The price demanded for a thing or service; a debit to an account." It is stated in 14 Corpus

Juris Secundum, at page 402: "In what may be deemed a commercial sense, [charge is] the price required or demanded for service rendered, or . . . for goods supplied." ▆ When a buyer receives cash checks, trading stamps or any other form of price discount on a purchase of an item of goods, he is not making a charge to the merchant who sells it. This is so whether the discount is allowed only when the merchant does not deliver the goods to the buyer's home, or is a discount for cash or for a volume purchase.

▆ We have referred above to the allowance as a "price discount." In *Consolidated Rock etc. Co.* v. *State,* 57 Cal. App.2d 959, 966-969 [135 P.2d 699], (the counterpart of this case, except that there the seller made a transportation charge; here the buyer receives a transportation credit) the charge was called, by the court, a "differential in price." There the sellers transported the goods sold and made a charge for doing so, although it was not separately stated on the invoice. These differences do not distinguish the rationale of the decision. There the plaintiff-taxpayer's position was that "specific charge" meant "a charge specified to be for the transportation of the goods transported," and did not "include an addition to the selling price," based upon such cost. In accepting this theory the court looked to the legislative history when the derivation section was amended in 1937. (Stats. 1937, ch. 679.) It pointed out that at one point during the legislative session the exclusionary clause had read: The term "operator" shall not include any person transporting his own property in his own motor vehicle "who makes no specific charge *or receives no differential in price for the delivery of his property.*" (Emphasis added.) The italicized phrase was omitted in the bill as finally adopted and the court held that this showed the legislature recognized a distinction between "specific charge" and "differential in price."

The court said (on page 968): "If the words 'specific charge' were otherwise ambiguous the legislative history clearly indicates their true meaning as intended by the Legislature. (*Sato* v. *Hall,* 191 Cal. 510, 519 [217 P. 520].)"

In other words, the "specific charge" referred to in the law was held to mean a charge other than a price differential.

This case is stronger than *Consolidated Rock* because there the taxpayer *did* make a charge; here he gets a credit. There the taxpayer controlled the amount of the charge and the factors upon which it was based. Here the taxpayer has no control over the amount of the charge whatever—other than

to withhold his patronage if he does not like the price, or perhaps to bargain for the price.

The Attorney General argues the inapplicability of *Consolidated Rock*, contending that the intent there "was to exempt solely *unexplained* price differentials." (Emphasis ours.) He is mistaken. The price differentials there were NOT unexplained. We quote from the decision (on p. 961): ". . . The territory of Southern California is divided by the rock and gravel companies into zones, and transportation charges to the various zones are established. On its smaller sales the difference between the price of materials delivered at the plant and those conveyed to the purchasers in its trucks is regulated according to these zones. On larger sales an addition is always made to the price of materials at the plant where they are conveyed to the purchasers in plaintiff's trucks. During this period . . . plaintiff made many sales to the United States Government, the prices of which were determined by competitive bid. In making such bids plaintiff took into consideration the cost of hauling the materials in its own trucks."

Appellant complains that an interpretation other than that for which it contends renders the phrase "unless there is a specific charge for transportation" meaningless. This is not so, for there would seem to be a wide field in which an owner of goods transporting them in his own trucks to and for a third party and making a charge therefor (not reflected in any price differential) would be liable to pay the tax. But if we are mistaken in this assumption then we again agree with the trial court that this is a matter for the Legislature. *Consolidated Rock* has been in the reports since April 1943, with the State Board of Equalization and the Attorney General both aware of, and alert to, its holding and the implications thereof. That ten successive Legislatures have not seen fit to insert "or price differential" after "specific charge" is a rather strong indication that the Legislature does not choose to do so. (*Kusior* v. *Silver*, 54 Cal.2d 603, 618 [354 P.2d 675].) We do not choose to accomplish this by judicial legislation.

The judgment is affirmed.

Peek, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied April 4, 1962, and Appellant's petition for a hearing by the Supreme Court was denied May 9, 1962.