[Civ. No. 35022. Second Dist., Div. Five. Nov. 4, 1970.]

DEALERS INSTALLATION SERVICE, INC.,
Plaintiff and Respondent, v.
STATE BOARD OF EQUALIZATION,
Defendant and Appellant.

## COUNSEL

Thomas C. Lynch, Attorney General, Neal J. Gobar, and Mario A. Roberti, Deputy Attorneys General, for Defendant and Appellant.

Bachrack & Wilson and Herman A. Bachrack for Plaintiff and Respondent.

## OPINION

**AISO, J.**—Plaintiff Dealers Installation Service, Inc., a corporation, sued for a refund of $4,403.10 (tax $3,299.87, interest $773.24, and penalty $329.99) which it claimed had been illegally imposed upon it under the Motor Vehicle Transportation License Tax and won judgment in the trial court. From that judgment defendant State Board of Equalization of the State of California (hereinafter "the Board") appeals.

The sole question is whether plaintiff's business activities constituted it a "person engaging in the transportation of . . . property for hire or compensation by or upon a motor vehicle upon any public highway in this State, either directly or indirectly." (Rev. & Tax. Code, § 9603, subd. (a).)[1]

We have concluded that the trial court erred in holding that plaintiff was not such a person and that the judgment should therefore be reversed.

### I.

The case was presented to the court, sitting without a jury, upon a stipulation of facts and a reporter's transcript of the hearing before the Board. The evidence is not in conflict and the facts may be summarized as follows:

During the period January 1, 1962, through June 30, 1964, plaintiff was under contract with various department stores to deliver and install appliances purchased by consumers from those stores. With the exception of that with J. C. Penney Co., all the contracts were oral. The merchandise was stored in plaintiff's warehouse but title to the merchandise remained in the department stores until it passed directly to the buyer. The department stores paid plaintiff a set price for its services depending on the type of appliance installed: e.g. television set—$6.50; dish washers, refrigerators and freezers—$9; washing machines, dryers and ranges—$11.50. The price included cost of materials used in effecting the installation.

---

[1]Counsel for both sides have advised the court that section 9653 of the Revenue and Taxation Code is not involved in this appeal.

Plaintiff's standard operating procedure was to make up regular routes for its various crews and specify the order in which the merchandise was to be delivered and installed. On a usual morning 15 to 20 appliances were loaded onto a 16-foot van. Transport ladders, tools and supplies were also carried on the truck. The loaded truck was driven on its route. As it arrived at a customer's home, the ordered appliance was uncrated (if it came packed in a crate) and then carried to the place specified by the customer. Shipping bolts and brackets used to protect the appliance were next removed. The appliance was then connected with an electrical outlet, gas line, or plumbing fixture as required. The appliance was thereafter adjusted, and the customer instructed on how to properly operate it.

Typical of the services performed were those mentioned in the contract with the J. C. Penney Company. "Delivery shall mean transportation of the equipment from the J. C. Penney store or warehouse to the customer's home or other location designated by Penney, uncrating the equipment, placing it in a location designated by the customer or Penney, and cleanup, including removal of unwanted crates, and so forth. Where the equipment replaces similar equipment, the contractor shall, if the customer shall so request, disconnect and remove the replaced equipment to a location on the customer's premises designated by the customer. At the customer's request, the contractor will, at a nominal charge to the customer, remove the replaced equipment from the customer's premises."

These services were performed by a lead man and a helper. Both men were trained in the handling of the merchandise. The lead man was required to have a background in electronics and television, mechanics and plumbing, and other skills pertaining to both the physical and mechanical handling of major appliances.

The installation of an appliance took about 37 minutes on an average. Distances between customer stops were approximately 3 miles, or 7 minutes in terms of time. The loading or unloading of an appliance onto or from a truck consumed about 1 minute and 50 seconds.

Plaintiff billed its customers for "D and I," which meant delivery and installation. Its contract with J. C. Penney Company stated "Delivery shall mean transportation of the equipment. . . ." Prior to November 1964 plaintiff's name, in fact, was "Dealer's Delivery Service, Inc."

From the foregoing, the trial court found: "8. At no time did the plaintiff engage in the transportation of persons or property for hire or compensation by or upon a motor vehicle upon any public highway in California, either directly or indirectly. 9. [Nor] did [it] receive any payment or make any

charge directly or indirectly for the transportation of persons or property in California."

## II.

■ Since the issue here is the applicability of the provisions of a tax statute to uncontradicted facts, we are confronted only with a question of law and are not bound by the findings of the trial court. (*Western Contracting Corp.* v. *State Board of Equalization* (1968) 265 Cal.App.2d 568, 575 [71 Cal.Rptr. 472]; *Standard Register Co.* v. *Franchise Tax Board* (1968) 259 Cal.App.2d 125, 129-130 [66 Cal.Rptr. 803]; *Automatic Canteen Co.* v. *State Board of Equalization* (1965) 238 Cal.App. 2d 372, 381 [47 Cal.Rptr. 848].)

The relevant portion of section 9603, subdivision (a), of the Motor Vehicle Transportation License Tax (Rev. & Tax. Code, §§ 9601 to 10505) has been set forth previously at the threshold of this opinion. Other pertinent sections are set forth in the margin below.[2]

■ Plaintiff argues that its fees were for installation services and did not include any sum for transportation. In support of this position, it points out that the charges varied only according to the type of appliance to be installed. They did not vary according to the distance traveled to make the delivery. The installation charge to the customer was the same whether the appliance was already at the home where it was to be installed or whether it had to be both delivered and installed. If the customer was not at home or if he refused to accept delivery at the time delivery was attempted, plaintiff took the item back to its warehouse and no charge was made. Plaintiff did not provide services consisting merely of transporting and delivering merchandise.

It contends that *Hughson Condensed Milk Co.* v. *State Board of Equalization* (1937) 23 Cal.App.2d 281 [73 P.2d 290], *Consolidated Rock Products Co.* v. *State of California* (1943) 57 Cal.App.2d 959 [135 P.2d 699], and *Rhodes & Jamieson, Ltd.* v. *California State Board of Equalization* (1962) 201 Cal.App.2d 343 [20 Cal.Rptr. 218], lend legal support to its position. The reliance on these cases, however, is misplaced. Each of them involved the transportation of the transporter's own goods. Section

---

[2]Section 9651: "A license tax is hereby imposed upon operators at the rate . . . of one and one-half percent (1½%) of their gross receipts from operations."

Section 9604: " 'Person' includes any . . . corporation. . . ."

Section 9603.3: " 'Operator' does not include . . .: (a) Any person transporting his own property . . . unless he makes a specific charge for the transportation. . . ."

All references to sections hereinafter made are to sections of the Motor Vehicle Transportation License Tax Law.

9603.3 expressly provides that "operator" does not include any person transporting his own property unless he makes a "specific charge for the transportation." Plaintiff in the instant case makes no claim that it was the owner of the merchandise involved at any time in the course of the operations concerned.

On the other hand, section 9603, subdivision (a), defines "operator" to include persons transporting property on a motor vehicle on a public highway in California for compensation, *either directly or indirectly*. (*In re Bush* (1936) 6 Cal.2d 43, 49 [56 P.2d 511]; *Consolidated Rock Products Co.* v. *State of California, supra,* 57 Cal.App.2d 959, 965.) The necessary loading and unloading operations incidental to the transportation for hire or compensation have been construed to be included in the taxable activity. (*Bekins Van Lines, Inc.* v. *Johnson* (1942) 21 Cal.2d 135, 140-141 [130 P.2d 421].) It is not necessary that delivery and transportation be the primary business of the operator. In construing the words "gross receipts from operation of motor vehicles," the court stated in *Bekins Van Lines, Inc.* v. *Johnson, supra,* at page 140: "It was undoubtedly intended to be limited to the transportation activities of a company which might also be engaged in warehousing, selling, or other business not strictly related to transportation of goods or persons." (See also, *In re Bush, supra,* 6 Cal.2d 43, 49; cf. *Consolidated Rock Products Co.* v. *State of California, supra,* 57 Cal.App. 2d 959, 966.) ▇ The purpose of the Motor Vehicle Transportation License Tax Law is "to collect a reasonable remuneration from those who use the highway in certain gainful occupations" (*In re Bush, supra,* at p. 55) to be ascertained from the wording of the statute.

▇ Although plaintiff claims that it receives no compensation for its transportation and delivery of appliances, the cost of maintaining its van type delivery vehicles and the other costs incurred for transportation and delivery are included in its overhead and are ultimately passed on to the clients through its billings. As earlier mentioned, plaintiff billed its clients for "D and I," which meant delivery and installation. "Delivery" in its contract with the Penney Company was defined to "mean transportation of the equipment." According to plaintiff's own figures, delivery and transportation represented 29 percent, approximately, of the time spent in what plaintiff would characterize as installation services. Plaintiff is thus indirectly receiving compensation for the transportation of property belonging to others by means of motor vehicles upon the public highways.

▇ "In interpreting the transaction[s] the taxing authority is not necessarily bound by the language the taxpayer [may choose] to describe [them] or by the bookkeeping entries chosen to record [them]." (*W. E. Hall*

*Co.* v. *Franchise Tax Bd.* (1968) 260 Cal.App.2d 179, 183 [66 Cal.Rptr. 911].) ▮▮▮ We hold that plaintiff is a person falling within the purview of section 9603, subdivision (a), of Motor Vehicle Transportation License Tax.

### III.

The judgment is reversed.

Stephens, Acting P. J., and Reppy, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 30, 1970.