[Civ. No. 29775. First Dist., Div. One. Oct. 24, 1972.]

PACIFIC MOTOR TRANSPORT COMPANY et al.,
Plaintiffs and Appellants, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

■■■■■■■■■■■■■

COUNSEL

Arnold I. Weber for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Ernest P. Goodman, Assistant Attorney General, Edward P. Hollingshead, and Philip M. Plant, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**ELKINGTON, J.**—Plaintiffs Pacific Motor Transport Company and Pacific Motor Trucking Company commenced an action to determine the validity of, and for a declaration of their rights and duties under, an administrative regulation of defendant State Board of Equalization. The trial court sustained the board's general demurrer on the ground that it lacked jurisdiction over the subject matter of the action. Plaintiffs' appeal is taken from the judgment of dismissal which was thereafter entered.

The regulation in dispute is Regulation 1432. It is designed to interpret and implement the "Motor Vehicle Transportation Tax Law" which is codified as sections 9601-10505 of the Revenue and Taxation Code; it particularly refers to sections 9603, 9606 and 9653. The regulation is lengthy and need not here be set forth in full. It is to be found in title 18, California Administrative Code, section 1432. Statutory references, unless stated otherwise, will hereafter be to the Revenue and Taxation Code.

Plaintiffs' action was brought under the purported authority of Government Code section 11440, which provides that: "Any interested person may obtain a judicial declaration as to the validity of any regulation by bringing an action for declaratory relief in the superior court in accordance with the provisions of the Code of Civil Procedure . . . ."[1]

---

[1]The full text of Government Code section 11440 follows: "Any interested person may obtain a judicial declaration as to the validity of any regulation by bringing an action for declaratory relief in the superior court in accordance with the provisions of the Code of Civil Procedure and in addition to any other ground which may exist, such regulation may be declared to be invalid for a substantial failure to comply with the provisions of this chapter or, in the case of an emergency regulation or order of repeal, upon the ground that the .facts recited in the statement do not constitute an emergency within the provisions of Section 11421(b)."

■■■■■■■

The relief prayed for included:

"1. That the court declare the respective rights and duties of plaintiffs and defendant under said regulation in question and that by said declaration and judgment it be declared that said regulation has no application to plaintiffs in this matter and that said regulation is invalid and void;

"2. In the alternative, that this court declare that plaintiffs can by suitable modification of their operations come within the ambit of section 1432(b)(3), and the tax liability which would result thereunder to each plaintiff; . . ."

It will be observed that by their action plaintiffs sought declarations (1) that Regulation 1432 was invalid and void, (2) that it had no application to them, (3) that they might come within some favorable "ambit" of the regulation, and (4) of their resulting tax liability thereunder.

In support of its demurrer in the superior court the board relied on section 10276. This section provides: "No injunction or writ of mandate or other legal or equitable process shall issue in any suit, action, or proceeding in any court against this State or against any officer of the State to prevent or enjoin the collection under this part of any license tax or other amounts sought to be collected by the board."

Basing its decision on section 10276, and as we have indicated, the trial court concluded that it lacked jurisdiction over the action since it was brought "with respect to determination of or payment of a tax."

The first question presented to us accordingly concerns the application to this case of two pertinent, but seemingly conflicting, statutes, Government Code section 11440 and section 10276.

Section 10276 expresses a basic policy of tax law—that assessment and collection of taxes by governmental agencies charged with that duty shall not be judicially prevented, hampered, or enjoined. In an early case, *Dows* v. *City of Chicago*, 78 U.S. 108, 110 [20 L.Ed. 65, 66], the United States Supreme Court stated: "Any delay in the proceedings of the officers, upon whom the duty is devolved of collecting the taxes, may derange the operations of government, and thereby cause serious detriment to the public. [¶] No court of equity will, therefore, allow its injunction to issue to restrain their action, except where it may be necessary to protect the rights of the citizen whose property is taxed, and he has no adequate remedy by the ordinary processes of the law. . . ."

In *Modern Barber Col.* v. *Cal. Emp. Stab. Com.*, 31 Cal.2d 720, 725-726 [192 P.2d 916], California's Supreme Court elaborated on this policy.

It was said: "The due process clause does not guarantee the right to judicial review of tax liability before payment. . . . 'The prompt payment of taxes is always important to the public welfare. It may be vital to the existence of a government. The idea that every tax-payer is entitled to the delays of litigation is unreason[able]. . . .' " (See also *Aronoff* v. *Franchise Tax Board*, 60 Cal.2d 177, 179 [32 Cal.Rptr. 1, 383 P.2d 409].) The taxpayers' remedy, at least ordinarily, is to pay the assessed tax and then commence an action for its refund. As stated in *Modern Barber College*, at page 726, and *Aronoff*, at page 179, "The power of a state to provide the remedy of suit to recover alleged overpayments as the exclusive means of judicial review of tax proceedings has long been unquestioned."

On the other hand, Government Code section 11440 allows any interested person to "obtain a judicial declaration as to the validity of any regulation . . . ." No exception appears as to regulations covering tax collection procedures, such as Regulation 1432. The section appears to be a legislative response to the obvious need for prompt judicial determination of the validity of questioned administrative regulations which have the binding force and effect of law. (2 Cal.Jur.2d, Administrative Law, § 82, p. 164.)

When such apparent conflicts or inconsistencies appear in separate codes it is the " 'well-recognized rule that for [the] purposes of statutory construction the codes are to be regarded as blending into each other and constituting but a single statute.' " (*Pesce* v. *Dept. Alcoholic Bev. Control*, 51 Cal.2d 310, 312 [333 P.2d 15].) In such a case "the courts are bound to maintain the integrity of both statutes if they may stand together." (*Warne* v. *Harkness*, 60 Cal.2d 579, 588 [35 Cal.Rptr. 601, 387 P.2d 377].)

We observe that Government Code section 11440 provides for a "judicial declaration as to the validity of *any regulation.*" (Italics added.) As we have noted, regulations covering tax collection procedures are not excepted. And there would seem to be no logical reason for such an exception, for the need of certainty as to the validity of tax regulations is equally strong.

Courts may not read into a statute an exception not incorporated therein by the Legislature (*Estate of Appenfelder*, 99 Cal.App. 330, 332 [278 P. 473]), unless such an exception must reasonably and necessarily be implied in order not to "disregard or overturn a sound rule of public policy." (*Interinsurance Exchange* v. *Ohio Cas. Ins. Co.*, 58 Cal.2d 142, 152 [23 Cal.Rptr. 592, 373 P.2d 640].)

The immediate issue narrows to the question whether the public policy

inherent in section 10276 demands that tax regulations be removed from the ambit of Government Code section 11440. Or, expressed differently, is it reasonably possible to give effect to, and "maintain the integrity" of, both statutes.

■ We conclude that both statutes may reasonably be given effect without doing violence to either. Our reasons follow.

We note that Government Code section 11440, by its express terms, does no more than permit judicial determination *as to the validity* of a regulation. The policy behind Revenue and Taxation Code section 10276 proscribes *judicial interference* in the tax collection process. No sound reason appears why an interested party should not have the question of a tax regulation's validity determined, so long as the tax collector is not hindered in his duties thereby. State and federal courts are frequently, in one way or another, passing upon the validity of tax regulations after payment of the required tax. These determinations then affect taxpayers and tax collections in other pending and future cases. Rather than an impediment, such decisions must be considered as in aid of tax collection, for they tend to add certainty and conclusive legality to the process. They do no harm to the public policy expressed by section 10276.

Care must be taken in judicial proceedings under Government Code section 11440 as they relate to such tax regulations, that the relief be limited in the statute's language to "a judicial declaration as to the *validity* of" the questioned regulation. (Italics added.) The relief afforded may not "prevent or enjoin" or otherwise hamper present or future tax assessment or collection effort against the plaintiff or anyone, as proscribed by section 10276. It will be presumed that the governmental agency will respect a judicial declaration concerning a regulation's validity. If it does not the taxpayer's remedy lies in paying the assessed taxes and then commencing action based upon such invalidity for their refund.

We accordingly hold that the validity of an administrative tax regulation such as Regulation 1432 may be determined by a declaratory relief action commenced under Government Code section 11440.

We now apply this holding to the case before us. As we have pointed out, plaintiffs' complaint sought not only an adjudication of the regulation's validity, but also other relief. This other relief, having the obvious tendency to interfere with the board's assessment and collection of taxes, because of section 10276 was not available to plaintiffs by their action or otherwise.

It becomes apparent that the trial court had jurisdiction to entertain plaintiffs' action and to grant a portion of the relief sought by them. "If a complaint is sustainable on any theory it is not vulnerable to a general demurrer." (*Schumm* v. *Berg,* 37 Cal.2d 174, 183 [231 P.2d 39, 21 A.L.R.2d 1051]; see also *Lord* v. *Garland,* 27 Cal.2d 840, 850 [168 P.2d 5]; *Goland* v. *Nolan & Co.,* 2 Cal.2d 96, 97 [38 P.2d 783]; *Watson* v. *Aced,* 156 Cal.App.2d 87, 91 [319 P.2d 83]; *McDonell* v. *American Trust Co.,* 130 Cal.App.2d 296, 301-302 [279 P.2d 138].)

 The trial court accordingly erred in concluding that it lacked jurisdiction over the action, in sustaining the board's general demurrer, and in dismissing the action.

We are aware of the holdings that in *nontax* cases declaratory relief judgments under section 11440 may grant relief in addition to determination of an administrative regulation's validity. (E.g., *Morris* v. *Williams,* 67 Cal.2d 733 [63 Cal.Rptr. 689, 433 P.2d 697]; *Chas. L. Harney, Inc.* v. *Contractors' Bd.,* 39 Cal.2d 561 [247 P.2d 913]; *County of L. A.* v. *State Dept. Pub. Health,* 158 Cal.App.2d 425, 443-444 [322 P.2d 968].) But in such cases courts are not bound by the strictures of statutes such as section 10276 and the related public policy.

 As we have resolved the issue before us, the board's argument that plaintiffs have not exhausted available administrative remedies has lost its substance. Obviously no *administrative remedy* was available to obtain the *judicial declaration* authorized by section 11440.

 No merit is found in the board's contention that the trial court nevertheless had authority to dismiss plaintiffs' action under Code of Civil Procedure section 1061, providing: "The court may refuse to exercise the power granted by this chapter in any case where its declaration or determination is not necessary or proper at the time under all the circumstances."

We first point out that the trial court did not conclude that the relief sought by plaintiffs was "not necessary or proper at the time under all the circumstances"; instead it erroneously found a lack of jurisdiction.

Furthermore, the Supreme Court in *Chas. L. Harney, Inc.* v. *Contractors' Bd.,* supra, 39 Cal.2d 561, 564, held that an interested party "is *entitled* under section 11440 of the Government Code to obtain a judicial declaration as to the validity" of an administrative regulation. (Italics added.) "The Legislature," the court said, "by [the] enactment of section 11440, must have intended to permit persons affected by an administrative

regulation to test its validity . . . ." And it was held (p. 565) that where such relief was sought "it was error for the trial court to enter a judgment for defendants on the pleadings." (Contra: see dicta, *Gen Elec. Co.* v. *State Bd. of Equalization*, 111 Cal.App.2d 180, 192 [244 P.2d 427].) It is significant that the court held an interested person to be *entitled* under section 11440 "to obtain a judicial declaration" while the Code of Civil Procedure says one may "bring an action" (Code Civ. Proc., § 1060), subject to dismissal if the court shall determine that the relief sought "is not necessary or proper at the time under all the circumstances." (Code Civ. Proc., § 1061.) The statute's language gives added force to the holding of *Chas. L. Harney, Inc., supra.*

We have read and considered the authorities relied upon by the board: *Aronoff* v. *Franchise Tax Board, supra,* 60 Cal.2d 177; *Modern Barber Col.* v. *Cal. Emp. Stab. Com., supra,* 31 Cal.2d 720; *Casey* v. *Bonelli,* 93 Cal.App.2d 253 [208 P.2d 723]; *Estate of Schneider,* 62 Cal.App.2d 463 [145 P.2d 90]; *Louis Eckert B. Co.* v. *Unemploy. R. Com.,* 47 Cal.App.2d 844 [119 P.2d 227]. None of these cases concerns section 11440 or an action to determine the validity of an administrative regulation. And none is in any way inconsistent with our holding.

We have also considered *Hughson Con. Milk Co.* v. *State Board,* 23 Cal.App.2d 281 [73 P.2d 290], which is heavily relied upon by plaintiffs. That case also did not relate to section 11440 or any similar statute, nor did it concern the validity of an administrative regulation. It is offered to sustain plaintiffs' argument that courts will, in proper cases, interfere with the tax collection process, despite Revenue and Taxation Code section 10276 and similar authority. In *Hughson Con. Milk Co.,* upon the plaintiff's resistance to the imposition of a certain tax status, the defendant board attempted to deny its trucks the use of state highways. In resisting plaintiff's action for relief the board urged the substantially similar predecessor statute to Revenue and Taxation Code section 10276, which also denied the judicial right to "prevent or enjoin" the collection of a tax. The appellate court affirmed a judgment enjoining the board from its intended action. The court stated (p. 283): "That this position of the appellants is untenable readily appears from the fact that this action is not one to restrain the collection of a tax. It is simply a proceeding intended, and having for its purpose the restraining of certain officers from canceling truck registration certificates, and thereby barring the plaintiff's trucks from the highway." That conclusion obviously lends no support to the contention of the plaintiffs on this appeal.

However, the *Hughson Con. Milk Co.* court then went on to determine the merits of the tax controversy in favor of the plaintiff, even though the subject taxes had not been paid. This does give comfort to the instant plaintiffs in their demand for a broad judicial declaration of their rights and liabilities as to taxes proposed to be assessed by the board. But the additional relief granted in *Hughson Con. Milk Co.* is wholly inconsistent with Revenue and Taxation Code section 10276, and the later and higher authority of *Modern Barber Col.* v. *Cal. Emp. Stab. Com., supra,* 31 Cal.2d 720, and *Aronoff* v. *Franchise Tax Board, supra,* 60 Cal.2d 177. And the authority of *Hughson Con. Milk Co.* has been expressly questioned; see *Helms Bakeries* v. *St. Bd. Equalization,* 53 Cal.App.2d 417, 422 [128 P.2d 167], and *Consolidated Rock etc. Co.* v. *State of Cal.,* 57 Cal. App.2d 959, 963 [135 P.2d 699], which latter case states, "we regard it as dictum not binding on us." Because of the conflicting higher authority we have cited, we also consider *Hughson Con. Milk Co.* as of no binding effect.

Plaintiffs, relying on Code of Civil Procedure section 909 (formerly § 956a), have requested that this court dispose of the issues presented, rather than remand to the superior court for that purpose. This section authorizes a reviewing court for any purpose "in the interests of justice" to "give or direct the entry of any judgment" to the end that, "where feasible, causes may be finally disposed of by a single appeal and without further proceedings in the trial court . . . ." Since the validity of the questioned regulation is wholly a question of law we find it feasible here to decide the issue of its validity.

The criteria by which an appellate court passes upon the validity of an administrative regulation was stated in this manner by the court in *Morris* v. *Williams,* 67 Cal.2d 733, 737, 748 [63 Cal.Rptr. 689, 433 P.2d 697]: "Our function is to inquire into the legality of the regulations, not their wisdom. Nor do we superimpose upon the agency any policy judgments of our own. . . . Administrative regulations that alter or amend the statute or enlarge or impair its scope are void and courts not only may, but it is their obligation to strike down such regulations." And it has also been said that the " 'construction of a statute by the officials charged with its administration must be given great weight' " and that the court's role is limited to determining whether they have reasonably interpreted the granted power. (*Ralphs Grocery Co.* v. *Reimel,* 69 Cal.2d 172, 176 [70 Cal.Rptr. 407, 444 P.2d 79].)

The statutes and regulation with which we are concerned touch upon

a common practice of the trucking industry of this state, and perhaps elsewhere. An "express company" receives property for transportation by motor vehicle over the state's highways. That company thereupon in the same city delivers the property to an affiliated "line common carrier" for transportation to the city of its destination, at which point it is handed back to the express company for delivery to the consignee. The express company, of course, collects the entire transportation charge which becomes part of its gross receipts. From this charge it then pays the line common carrier's charge for its part of the hauling, which payment becomes part of the latter company's gross receipts. The practice probably results from the language of section 9653 providing that "The [Motor Vehicle Transportation License] tax does not apply to the gross receipts derived from the transportation of persons or property wholly within incorporated cities or between incorporated cities or incorporated cities and private property or wholly on private property where no portion of the public highway outside the corporate limits of the cities or private property is traversed in such operation." Some earlier cases were apparently interpreted as suggesting that conducting intracity and intercity operations "as separate enterprises" might lessen the overall tax burden. (See *Cal. Motor etc. Co.* v. *State Bd. of Equal.* (1947) 31 Cal.2d 217, 223 [187 P.2d 745]; *So. Cal. Freight Lines* v. *St. Bd. of Equal.* (1945) 72 Cal.App.2d 26, 30-31 [163 P.2d 776].)

The Motor Vehicle Transportation License Tax Law imposes a tax on the "gross receipts" of "operators." (§ 9651.)

Section 9603, as relevant, states: " 'Operator' includes: (a) Any person engaging in the transportation of persons or property for hire or compensation by or upon a motor vehicle upon any public highway in this State, either directly or indirectly."

Section 9606 defines "gross receipts." As relevant it provides: " 'Gross receipts' include all receipts from transportation operations entirely within this State . . . . *'Gross receipts' do not include revenue derived by an express company from the shipment of property over lines of common carriers,* but do include revenue derived by an express company from the transportation of property in motor vehicles operated by it." (Italics added.)

 Plaintiffs' first contention as to the invalidity of Regulation 1432 relates to its paragraph (b)(4) which provides:

"If an express company performs the pickup or delivery between store-door and the terminal either in its motor vehicles or in vehicles operated by it (including purchased transportation, lease or joint facilities use agree-

ments), the express company is liable for the tax on its express revenue less the revenue derived by it from the shipment of property over the lines of line common carriers. . . ." They insist that this conflicts with the language of section 9606 that gross receipts "do not include revenue derived by an express company from the shipment of property over the lines of common carriers."

The point is without merit.

The gross receipts of both the express company and the line common carrier are ordinarily subject to the tax. The statute recognizes that in the "express company-line common carrier" relationship it is the former which ordinarily collects the entire transportation charge from the shipper. Section 9606 simply provides that the sums paid to the line common carrier by the express company are not to be deemed part of the latter's gross receipts; were it otherwise double taxation would apply to the state highway portion of one continuous transportation operation.

■ It is now clear that the intent of the Motor Vehicle Transportation Tax Law is that all gross receipts for through transportation of property, even where partly on and partly off the state's highway system, be taxed. Our appellate courts have said: that "pickup and delivery services even though entirely intracity were an inseparable part of the entire transportation of the same property in intercity hauls, and receipts therefrom were taxable" (*Bekins Van Lines* v. *State Bd. of Equal.* (1964) 62 Cal.2d 84, 90 [41 Cal.Rptr. 297, 396 P.2d 713]); that taxable " 'transportation operations' refer to any and all activities which contribute to an origin-to-destination movement" and that "when any portion of an operation is outside a city, . . . the entire receipts are subject to tax . . . even where the carrier separates his operations and equipment within the cities from his long-haul operations and equipment . . ." (*Stadler* v. *State Bd. of Equalization* (1964) 227 Cal.App.2d 314, 317, 321 [38 Cal.Rptr. 587]); and "[W]e do not see how intracity operations which are an inseparable part of intercity operations can be considered exempt from the gross receipts tax." (*Santa Fe Transp.* v. *State Board of Equal.* (1959) 51 Cal.2d 531, 541 [334 P.2d 907].)

Under plaintiffs' theory no tax would be imposed on the gross receipts of an express company's intracity contribution to an "origin-to-destination" movement of property—a result obviously not contemplated by the Legislature.

Plaintiffs argue that "Ruling No. 1432 is contrary to long established, and valid, administrative interpretation."

It is true that prior to 1958 the State Board of Equalization interpreted the relevant statutes as excluding from taxation an express company's gross receipts arising from its intracity trucking operations, even when delivering and receiving intercity shipments to and from its line common carrier. But that interpretation, apparently based on language of the earlier cases we have mentioned, was shown to have been incorrect by the courts in *Bekins Van Lines* v. *State Bd. of Equal., supra, Santa Fe Transp.* v. *State Board of Equal., supra,* and *Stadler* v. *State Bd. of Equalization, supra.*

When a regulation or other statutory interpretation of an administrative agency appears to be erroneous, it becomes the agency's duty to conform to the correct interpretation. Otherwise, by persistence in such error, the agency would be permitted to function in a manner wholly unintended by law. And, "Obviously, a tax administrator should not be permitted by an erroneous ruling to exempt a taxpayer from the obligation to pay taxes." (*Market St. Ry. Co.* v. *Cal. St. Bd. Equal.,* 137 Cal.App.2d 87, 100-101 [290 P.2d 20].)

█ We hold that paragraph (b)(4) of Regulation 1432 is a valid administrative regulation, and that it does not alter or amend, or enlarge or impair the scope of, its related statutes.

█ Plaintiffs' remaining contention of invalidity runs to paragraph (a)(1) of Regulation 1432 which states:

"Except where the context otherwise requires, the following definitions govern the construction of this regulation:

"(1) 'Express company' as used in section 9606 of the Revenue and Taxation Code means 'express corporation 'as defined in section 219 of the Public Utilities Code of California, which holds an express company operating authority and which engages as a common carrier in, or transacts the business of, transporting property for compensation over the line of any common carrier in interstate commerce in this state. Where the transportation is by motor vehicle, the express company is an 'operator' subject to the Motor Vehicle Transportation License Tax Law."

Public Utilities Code section 219, referred to above, provides:

" 'Express corporation' includes every corporation or person engaged in or transacting the business of transporting any freight, merchandise, or other property for compensation on the line of any common carrier or stage or auto stage line within this State."

The argument here is substantially the same as that which we have already considered—it is that this portion of the regulation also runs contrary to the statutes since it permits taxation of an express company's intracity trucking operations to and from the line common carrier engaged in the intercity hauling of the property. As we have pointed out this contention is unsound. The regulation's definition of "express company" reasonably implements and interprets its related statutes.

We hold paragraph (a)(1) also to be a valid portion of Regulation 1432.

A related contention of plaintiffs seems to be that Regulation 1432 is subject to the interpretation that even such portion of an "express company's gross receipts as may be derived from activities wholly unrelated to any use of the state's highways are taxable, a result unintended by the Legislature. An illustration might be found in a motor truck delivery made within an incorporated city to a railroad or airline carrier for intercity transportation. The contention that such taxation is not permitted by the Motor Vehicle Transportation Tax Law is sound. That statute is not designed to tax the portion of an express company's gross receipts fairly allocable to such wholly non-state highway related operations. "The tax is levied . . . for the privilege of transporting property for hire or compensation over the [state's] public highways." (*Geijsbeek* v. *Board of Equalization,* 222 Cal.App.2d 234, 240 [34 Cal.Rptr. 892]); ". . . its purpose is to collect a reasonable remuneration from those who use the highway in certain gainful occupations." (*In re Bush,* 6 Cal.2d 43, 55 [56 P.2d 511]; *Dealers Installation Service, Inc.* v. *State Bd. of Equal.,* 13 Cal.App.3d 395, 400 [90 Cal.Rptr. 888].) And it is held that taxable "[g]ross receipts are to include all receipts from the operation of motor vehicles" upon the state's public highways. (*San Diego etc. Ry. Co.* v. *Bd. of Equalization,* 89 Cal.App.2d 267, 268 [200 P.2d 573].) But we conclude that Regulation 1432, is *not* reasonably subject to the interpretation suggested by plaintiffs.

The judgment of dismissal is reversed; the superior court will enter judgment declaring paragraphs (a)(1) and (b)(4) of Regulation 1432 of the State Board of Equalization to be valid.

Molinari, P. J., and Kongsgaard, J.,* concurred.

A petition for a rehearing was denied November 21, 1972, and the opinion was modified to read as printed above. Appellants' petition for a hearing by the Supreme Court was denied December 20, 1972.

---

*Assigned by the Chairman of the Judicial Council.