Filed 5/7/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION et al., <br><br> Petitioner, <br><br> v. <br><br> SUPERIOR COURT, <br><br> Respondent. <br> _____ <br><br> JEREMY DANIEL KINTNER, <br><br> Real Party in Interest. | B294400 <br><br> (Los Angeles County Super. Ct. No. BC684614) |

     WRIT PETITION from an order of the Superior Court of Los Angeles County, Robert S. Draper, Judge.  Petition granted.

     Xavier Becerra, Attorney General, Diane S. Shaw, Assistant Attorney General, Lisa W. Chao, Deputy Attorney General, Laura E. Robbins, Deputy Attorney General for Petitioner.

     Mark Bernsley for Real Party in Interest.

No appearance for Respondent.

\* \* \* \* \* \*

Article XIII, section 32 of the California Constitution (section 32) requires taxpayers to pay a tax before they can challenge its assessment. (Cal. Const., art. XIII, § 32; *Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1107 (*Loeffler*).) Government Code section 11350 (section 11350) provides that "[a]ny interested person" may sue for declaratory relief "as to the validity of any regulation." (Gov. Code, § 11350.) Can a taxpayer avoid section 32's "pay first" rule by alleging, in a claim for declaratory relief invoking section 11350, that the tax regulation giving rise to his unpaid tax assessment is invalid? We hold that the answer is "no." What is more, to the extent language in *Pacific Motor Transport Co. v. State Bd. of Equalization* (1972) 28 Cal.App.3d 230 (*Pacific Motor*) can be read to suggest a contrary answer, we respectfully disagree with *Pacific Motor*. In light of our holding, we grant the writ petition challenging the trial court's order overruling the demurrer in this case, and direct the trial court to enter a new and different order sustaining the demurrer without leave to amend.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts[1]

Back in 2009, HK Architectural Supply, Inc. ("HK

---

[1] These facts are drawn from the original complaint, the operative first amended complaint, and documents subject to judicial notice. (*Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010 (*Centinela Freeman*).)

Architectural") was a closely held corporation. Jeremy Daniel Kintner (plaintiff) was an officer and shareholder in HK Architectural, and in that capacity controlled its operations.

On May 28, 2009, the California Franchise Tax Board suspended HK Architectural's corporate status. Despite being suspended, HK Architectural continued to do business but did not pay any sales tax.

In February 2012, the Board of Equalization (the Board) assessed plaintiff for the amount of sales tax that HK Architectural owed but never remitted to the Board for the last three quarters of 2009. The Board initially assessed plaintiff $71,408 in unpaid taxes and penalties, but subsequently reduced the assessment to $67,389.53 (exclusive of interest).[2] The Board assessed plaintiff pursuant to (1) a 1980 "policy" of holding the "officers and shareholders controlling a closely held corporation" liable for unpaid sales tax during "any period" in which the corporation's "powers were suspended . . . for failure to pay franchise taxes" ("the Policy"), and (2) a 2000 regulation that codified the Policy ("the Regulation") (18 Cal. Code Reg., § 1702.6).

As did the trial court, we grant the California Department of Fee and Tax Administration's request for judicial notice. (Evid. Code, §§ 452, subd. (c), 459.)

[2] The writ petition alleges that plaintiff originally owed $51,006 in taxes and $20,402 in penalties, but we cannot decipher the penalty amount from the exhibits accompanying the petition. The precise amount of the original assessment of taxes and penalties is ultimately irrelevant, however, because that assessment was subsequently reduced.

3

## II.    Procedural Background

### A.    *Original complaint*

In November 2017, plaintiff sued the Board and its successor entity, the California Department of Tax and Fee Administration (the Department).[3]  Plaintiff alleged three claims for declaratory relief—two seeking declarations that the Policy and the Regulation, respectively, constituted an "illegal and unconstitutional exercise of legislative power," and one seeking a declaration that the Board's refusal to consider challenges to the Policy or Regulation during administrative proceedings violated due process.  As relief, plaintiff prayed for declarations that the Policy and Regulation "may not be implemented, enforced or otherwise relied upon" and that the assessment against plaintiff "was illegal, unconstitutional and void."

The trial court granted judgment on the pleadings to the Board and the Department.  Because plaintiff had not paid the sales tax he was challenging, the court reasoned, the "pay-first, litigate-second rule" set forth in the "text" of the "California Constitution" barred plaintiff's lawsuit "challeng[ing]" the sales tax as "illegal."  The dismissal was without leave to amend as to the Board (because it was largely defunct); as to the Department, however, the court granted plaintiff leave to "amend his Complaint to make it a refund action."

### B.    *First amended complaint*

#### 1.    *Allegations*

In June 2018, plaintiff filed a first amended complaint. Contrary to the conditions of the trial court's grant of leave to

---

[3]     The Legislature created the Department in 2017 and, in so doing, transferred most of the Board's tax-related duties and powers.  (Assem. Bill. No. 102 (2017-2018 Reg. Sess.) § 1.)

4

amend, the first amended complaint was not a refund action because plaintiff had yet to pay—or file an administrative refund claim for—the vast majority of the outstanding tax assessment. Indeed, it was not until after he filed his original complaint that plaintiff paid—and filed an administrative refund claim for—just 11 percent of the assessed amount (that is, $7,450.98 of the $67,389.53 assessed tax liability).

Instead, plaintiff re-alleged two of the declaratory relief claims from his original complaint—namely, that the Policy and the Regulation were "illegal" and "unconstitutional."

Plaintiff also alleged that he had standing to bring these claims for declaratory relief due to three distinct "interests and controversies": (1) as a person against whom a tax had been assessed based on the Policy and the Regulation, (2) as a "responsible officer" of a different "closely held corporation" called JK Supply Corp. ("JK Supply"), against whom the Policy and Regulation could be applied in the future, and (3) as a "member[] of the public" and "citizen" of California interested in "hav[ing] all branches of government . . . act within the bounds of their constitutional authority." Throughout the first amended complaint, plaintiff repeatedly cited section 11350.

As relief, plaintiff prayed for a declaration that (1) the Policy and the Regulation are "illegal" and "violate[] the . . . Constitution," and (2) "[a]ny purported liability based on the Policy" or the Regulation "is not a 'tax' or liability for a 'tax' for purposes of the Constitution and laws of California." Plaintiff alleged that he did "not seek . . . to prevent or enjoin the collection of any tax."

5

2.    *Demurrer*

The Department demurred to the first amended complaint. After briefing and a hearing, the trial court overruled the demurrer. In its order, the court rejected plaintiff's argument that the 2012 assessments were not "taxes." However, because plaintiff "omitted [from the first amended complaint] the prayer [from his original complaint] that [the Department's] assessment against him be absolved," the court viewed plaintiff's lawsuit as "an action to determine the validity of a particular regulation." This meant, the court continued, that plaintiff's lawsuit was "separate from any claim related to an individual's assessment" and "not one 'maintained to recover the tax paid,'" such that the pay-first rule did not apply. For support, the court cited section 11350 and *Pacific Motor*, *supra*, 28 Cal.App.3d 230.

C.    **Writ petition**

In December 2018, the Department filed a petition for a writ of mandate seeking an order overturning the trial court's ruling. In December 2019, we issued an alternative writ of mandate ordering the trial court to enter a new order sustaining the demurrer with leave to amend "to allege payment of the tax due and a claim for refund." After the trial court declined to vacate its order, plaintiff filed a return and the Department filed a traverse.

## DISCUSSION

The Department argues that the trial court erred in overruling its demurrer to plaintiff's first amended complaint because, in its view, the two declaratory relief claims alleged in that pleading are barred by the "pay-first, litigate-later" rule embodied in section 32. As a threshold matter, plaintiff argues that we should dismiss the Department's petition as

6

inappropriate for writ review.  We will examine the threshold issue first.

## I.    Propriety of Writ Review

Even though a trial court's order overruling a demurrer is subject to review on appeal from the final judgment, an appellate court has the option to review such an order prior to final judgment through a writ of mandate.  (*San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 912-913).  However, writ review is appropriate only when (1) "the remedy by appeal would be inadequate" (*Powers v. City of Richmond* (1995) 10 Cal.4th 85, 113) or (2) the writ presents a "significant issue of law" or an issue of "widespread" or "public interest" (*Brandt v. Superior Court* (1985) 37 Cal.3d 813, 816; *Fogarty v. Superior Court* (1981) 117 Cal.App.3d 316, 321; *Cryolife, Inc. v. Superior Court* (2003) 110 Cal.App.4th 1145, 1151).  Writ review is appropriate in this case because the Department's petition presents a significant issue of law (that is, whether a taxpayer may avoid the pay-first rule by challenging an unpaid assessment via a declaratory relief claim), and this is an issue of great public interest (because, as noted below, the pay-first rule is necessary to keep government running).

## II.    The Demurrer

In reviewing an order overruling a demurrer, we ask whether the operative complaint "'states facts sufficient to constitute a cause of action'" (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126) and, if it does, whether that complaint nevertheless "'disclose[s] some defense or bar to recovery' [citation]" (*Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 183).  In undertaking the inquiry, we accept as true all "'"material facts properly pleaded"'" and consider any

7

materials properly subject to judicial notice. (*Centinela Freeman*, *supra*, 1 Cal.5th at p. 1010.) We independently review a trial court's order overruling a demurrer (*Apple Inc. v. Superior Court* (2017) 18 Cal.App.5th 222, 240), including its analysis interpreting constitutional and statutory provisions (*California Advocates for Nursing Home Reform v. Smith* (2019) 38 Cal.App.5th 838, 864).

The propriety of the trial court's order overruling the demurrer in this case boils down to two questions: (1) Does the "pay first, litigate second" rule embodied in section 32 apply to plaintiff's operative complaint and, if so, (2) Does section 11350 or the nature of plaintiff's challenges exempt that complaint from the operation of section 32?

**A.     Does section 32 apply to—and bar—plaintiff's declaratory relief claims?**

California requires retailers to pay sales tax on the "tangible personal property" they sell at "retail." (Rev. & Tax Code, § 6051; *Loeffler*, *supra*, 58 Cal.4th at pp. 1093, 1104.) If a retailer-taxpayer wishes to challenge its duty to pay sales tax or the amount thereof as "erroneous[] or illegal[]," it may file an administrative claim for a refund (Rev. & Tax Code, § 6901) and, within 90 days after resolution of that claim, file a lawsuit for a tax refund (*id.*, §§ 6932, 6933). Before the retailer-taxpayer may pursue *either* avenue, however, it must first pay the disputed sales tax. (*Loeffler*, at p. 1107 ["Taxpayers seeking a refund must first pay the tax."]; *McClain v. Sav-On Drugs* (2019) 6 Cal.5th 951, 957 (*McClain*) [same].)

The origin of this "pay first, litigate second" rule is section 32, which provides:

"No legal or equitable process shall issue in any proceeding in any court against this State or any

officer thereof to prevent or enjoin the collection of any tax.  After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature."

(Cal. Const., art. XIII, § 32.)  By barring any "legal or equitable process" until "[a]fter payment of [the] tax claimed to be illegal," section 32 erects what is commonly known as the "pay first, litigate later" rule (*Flying Dutchman Park, Inc. v. City and County of San Francisco* (2001) 93 Cal.App.4th 1129, 1132 (*Flying Dutchman*)), or more colorfully known as the "pay up or shut up" rule (*Andal v. City of Stockton* (2006) 137 Cal.App.4th 86, 90 (*Andal*)).  Although its location within the California Constitution has changed from time to time, the language now contained in section 32 has been a part of the Constitution since at least 1913.  (Former Cal. Const., art. XIII, § 14 (1913); Former Cal. Const., art. XIII, § 15 (1933); see generally *Pacific Gas & Electric Co. v. State Board. of Equalization* (1980) 27 Cal.3d 277, 281 & fn. 5 (*Pacific Gas*) [detailing history].)  Our Legislature has also cut and pasted the key parts of section 32's language into various statutes.  (Rev. & Tax Code, § 6931; *Modern Barber Col. v. Cal. Emp. Stab. Com.* (1948) 31 Cal.2d 720, 723 (*Modern Barber*) [discussing former Unemployment Insurance Act, § 45.11, subd. (d) (1935)].)

Section 32 has been a bedrock principle of tax law for over a century because the public policy it effectuates is fundamental to the continued operation of our state.  "[M]oney is the lifeblood of modern government."  (*Chiatello v. City & County of San Francisco* (2010) 189 Cal.App.4th 472, 475.)  By requiring taxpayers to pay disputed taxes up front (rather than allowing

9

taxpayers to withhold the payment of taxes until disputes over taxation are resolved in litigation), section 32 ensures that the blood of the body politic keeps pumping because it "ensure[s] that the state may continue to collect tax revenue during litigation," thereby "avoid[ing] unnecessary disruption of public services . . . dependent on that revenue" and the attendant "'serious detriment to the public.'" (*Loeffler*, *supra*, 58 Cal.4th at p. 1101; *Pacific Gas*, *supra*, 27 Cal.3d at p. 283; *State Bd. of Equalization v. Superior Court (O'Hara & Kendall Aviation, Inc.)* (1985) 39 Cal.3d 633, 638-639 (*O'Hara*); *Modern Barber*, *supra*, 31 Cal.2d at pp. 731-732.)

Although section 32's plain language purports to preclude only "legal or equitable process . . . *to prevent or enjoin* the collection of any tax" until "[a]fter payment of [the disputed] tax" (Cal. Const., art. XIII, § 32, italics added), "a taxpayer may not circumvent [section 32's] restraints on prepayment tax litigation by seeking only declaratory relief" when the "net result" or "effect" of granting that declaratory relief is to absolve the taxpayer of liability for the disputed tax. (*O'Hara*, *supra*, 39 Cal.3d at p. 640; *Modern Barber*, *supra*, 31 Cal.2d at p. 723; *Pacific Gas*, *supra*, 27 Cal.3d at p. 280; *Estate of Schneider* (1944) 62 Cal.App.2d 463, 465.) Because adjudication of such declaratory relief claims would be binding on the state in any further proceedings regarding the taxpayer's liability (*O'Hara*, at p. 640, fn. 8 ["Public officials must respect the court's declaration and follow its interpretation of the law."]; *Louis Eckert Brewing Co. v. Unemployment Reserves Co.* (1941) 47 Cal.App.2d 844, 846 ["A declaratory judgment is an adjudication, not an abstraction."]; see also, *O'Hara*, at pp. 641-642 [State is required to raise all issues related to taxes owed in any given year under

res judicata]; see generally, *Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797 [collateral estoppel bars second action on issues "'"actually litigated and determined in the first action"'"]), the judgment resolving such claims would effectively prevent or enjoin the state from collecting the disputed tax. Thus, as our Supreme Court has noted time and again, declaratory relief claims that have the "net result" or "effect"—by virtue of collateral estoppel—of resolving a disputed tax claim are subject to section 32's "pay first, litigate later" rule. (*Loeffler*, *supra*, 58 Cal.4th at pp. 1101, 1128; *Woosley v. State of California* (1992) 3 Cal.4th 758, 785 (*Woosley*); *Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805, 838 (*Calfarm*); *Pacific Gas*, at p. 280; *O'Hara*, at pp. 638-640; *Modern Barber*, at p. 723; see also *Honeywell, Inc. v. State Board. of Equalization* (1975) 48 Cal.App.3d 907, 912 (*Honeywell*); *Casey v. Bonelli* (1949) 93 Cal.App.2d 253, 254-255; *Flying Dutchman*, *supra*, 93 Cal.App.4th at p. 1135.)

Because plaintiff has not paid the full amount of the sales tax he disputes, his declaratory relief claims are barred by section 32. Through his declaratory relief claims, plaintiff seeks a declaration that the Policy and the Regulation are "illegal" and "unconstitutional." Because, as plaintiff elsewhere alleges, the outstanding tax assessment against him rests exclusively upon the validity of the Policy and the Regulation, a declaration that the Policy and the Regulation are "illegal" and "unconstitutional" would invalidate them and negate the sole basis of his outstanding and unpaid tax assessment. In short, the net result or effect of plaintiff's declaratory relief claims is to absolve him of tax liability.

11

What is more, the net result or effect of plaintiff's lawsuit does not go away just because he has *also* alleged that he is a member of the public with a general interest in making sure that the government stays within the lines of its constitutional authority and that he is an officer of a different closely held corporation to which the Policy or Regulation might be applied in the future should both he and that corporation refuse to pay sales tax. Were we to conclude otherwise, taxpayers with outstanding tax assessments could effortlessly evade section 32's "pay first" rule by alleging that they are *also* members of the public. Given that this would be true in nearly every case, section 32 would become a dead letter.

## B. Does section 11350 operate to exempt plaintiff's declaratory relief claims from section 32?

Section 11350 provides, in pertinent part, that "[a]ny interested person may obtain a judicial declaration as to the validity of any regulation . . . by bringing an action for declaratory relief in the superior court in accordance with the Code of Civil Procedure." (Gov. Code, § 11350, subd. (a).)

By its plain text, section 11350 would appear to apply to plaintiff's declaratory relief claims. Both the Policy and the Regulation are "regulations." (Gov. Code, § 11342.600 ["regulation" includes "every rule, regulation, order, or standard of general application . . . adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it"].) And plaintiff is seeking a "judicial declaration" as to the "validity" of both.

Thus, we are squarely presented with the question: Is a declaratory relief claim authorized by section 11350 exempt from the "pay first" mandate of section 32, such that a taxpayer who has not paid an outstanding tax assessment can sue for a binding

12

declaration of his rights which, if successful, would invalidate that assessment?

We conclude that declaratory relief claims brought by taxpayers with outstanding tax assessments are not exempt from section 32's "pay first" rule, even if brought pursuant to section 11350. We reach this conclusion for three reasons.

First, this is the result dictated by the canons of statutory construction. One of the principal canons requires us to look first to the plain language of the provision at issue. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 735). Section 11350 authorizes declaratory relief claims challenging the validity of regulations, but says nothing about exempting such claims from section 32's "pay first" requirement. Two other canons preclude us from reading into section 11350 what our Legislature left out. We cannot construe section 11350's silence on this point as an implied partial repeal of section 32 due to the canon that "implied repeal[s]" are "disfavored" unless the conflicting statutes are "irreconcilable." (*Richmond Compassionate Care Collective v. 7 Stars Holistic Foundation* (2019) 33 Cal.App.5th 38, 48.) Here, they are not because section 32 and section 11350 can peaceably co-exist: Section 32's "pay first" rule governs those declaratory relief claims that have the net result or effect of invalidating an outstanding tax assessment, while section 11350 governs those declaratory relief claims that have no such result or effect, such as claims by (1) persons attacking non-tax regulations or persons attacking tax regulations but having no outstanding tax assessments, such as persons who are not the taxpayer (e.g., *McClain*, *supra*, 6 Cal.5th at pp. 959-960 [retail customers may seek declaratory relief as to validity of regulation affecting the taxpayer-retailers]) or (2)

13

persons who are taxpayers facing tax assessments *in the future* (e.g., *Andal*, *supra*, 137 Cal.App.4th at pp. 90-93 [taxpayers who have paid all outstanding tax assessments but who wish to challenge future assessments may seek declaratory relief as to validity of regulation affecting them]; *Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 822 ["a person aggrieved by the required payment of a tax . . . may challenge the validity of the taxing agency's policy . . . by a claim for declaratory relief"]; see generally, *Chas L. Harney, Inc. v. Contractors' State License Bd.* (1952) 39 Cal.2d 561, 564-565 [plaintiff may seek declaratory relief before "violat[ing] the administrative regulation"]; Code Civ. Proc., § 1060 [declaratory relief available "before there has been any breach of the obligation in respect to which said declaration is sought"]).  We also cannot construe section 11350 as impliedly repealing section 32 due to the canon that statutory provisions must yield to constitutional provisions, not the other way around.  (E.g., *Citizens Assn. of Sunset Beach v. Orange County Local Agency Formation Com.* (2012) 209 Cal.App.4th 1182, 1189 ["Constitutions trump conflicting statutes."].)

Second, the purpose underlying section 11350 does not justify exempting declaratory relief otherwise subject to section 32's "pay first" rule from its auspices.  Section 11350's predecessor statute was enacted in 1947 to create a judicial forum for "test[ing] . . . the validity or interpretative effect of a regulation" where such a forum did not previously exist, and did so by "extend[ing] the scope of declaratory relief . . . to include regulations of state government agencies."  (*Honeywell*, *supra*, 48 Cal.App.3d at p. 912.)  Because taxpayers with outstanding tax assessments already *have* an administrative and judicial forum

14

for testing the validity of tax regulations through the tax refund procedures enacted by our Legislature (Rev. & Tax Code, § 6901 *et seq*.), reading section 11350 to create a parallel forum for such taxpayers that is exempt from section 32's "pay first" rule goes far beyond our Legislature's intent in enacting section 11350 in the first place.  (See *Honeywell*, at p. 912 ["When [a] taxpayer has completed a transaction [giving rise to a tax assessment], resort to declaratory relief is no longer necessary or appropriate . . ."]; see also, *Flying Dutchman*, *supra*, 93 Cal.App.4th at p. 1138 ["declaratory relief will not be granted where there is a plain, complete, speedy, and adequate remedy at law" and the tax refund procedures "constitute" such a remedy].)

Third, our Supreme Court has already strongly suggested that section 11350 must not be read as an exemption from section 32's "pay first" rule.  In *Woosley*, *supra*, 3 Cal.4th at p. 785, fn. 20, the court noted that section 11350 is to be "strictly construed in tax cases and may not be used to prevent the state from collecting taxes or, by parity of reasoning, to compel the state to refund taxes."  In conjunction with the Supreme Court precedent cited above that holds that declaratory relief claims having the "net result" or "effect" of invalidating a tax assessment operate to enjoin the collection of taxes, *Woosley* seems to all but foreclose treating section 11350 as a "get out of paying first" card.

Plaintiff vehemently resists this conclusion and offers what boils down to four arguments in opposition.

First, he asserts that the weight of precedent is on his side.  *Pacific Motor*, *supra*, 28 Cal.App.3d 230, he explains, expressly "hold[s] that the validity of an administrative tax regulation . . . may be determined by a declaratory relief action commenced under" section 11350's predecessor statute.  (*Id.* at p. 236.)

15

Further, plaintiff continues, our Supreme Court has cited *Pacific Motor* favorably in *Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 320 (*Agnew*) and *Pacific Gas*, *supra*, 27 Cal.3d at p. 280, fn. 4.

Although the language from *Pacific Motor* could be read expansively to create an exemption from section 32's "pay first" requirement, there is good reason *not* to read it so broadly— namely, (1) because *Pacific Motor* at no point indicated that the plaintiff in that case had any outstanding and unpaid tax assessment, and (2) because *Pacific Motor* itself narrowed the scope of its holding when it elsewhere ruled that a "tax regulation's validity" may be "determined" in a declaratory relief claim "*so long as the tax collector is not hindered in his duties thereby*" (*Pacific Motor*, *supra*, 28 Cal.App.3d at p. 236, italics added). In its proper context, it is difficult to read *Pacific Motor* as authorizing declaratory relief claims—such as those with the net result or effect of invalidating outstanding tax assessments— that *do* hinder tax collection.

Neither *Agnew* nor *Pacific Gas* lend *Pacific Motor* any greater stature. *Agnew* cited *Pacific Motor* in the course of finding that the declaratory relief action *in that case* was not "barred by" section 32 (*Agnew*, *supra*, 21 Cal.4th at p. 320), but the taxpayer-plaintiff in *Agnew* had complied with section 32 by paying the outstanding tax prior to filing suit (*id.* at p. 314); although he had not paid *the interest* on the assessment before filing suit, our Supreme Court ultimately held in *Agnew* that section 32's "pay first" requirement applied only to the tax liability itself and not the associated interest (*id.* at pp. 323, 327, 333). Because the taxpayer in *Agnew did* "pay first," *Agnew* cannot be read to endorse the failure to do so. *Pacific Gas* cited

16

*Pacific Motor*, but only to distinguish it as dealing with "the validity of a tax regulation." (*Pacific Gas*, *supra*, 27 Cal.3d at p. 280, fn. 4.) *Pacific Gas*'s holding thus did not rest on the validity of *Pacific Motor*; its seemingly favorable citation to *Pacific Motor* is thus dicta and hence not binding (e.g., *Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1300-1301).

Properly read, *Pacific Motor* does not construe section 11350 in a way that renders it in conflict with section 32. To the extent a broader reading of *Pacific Motor* suggests such a conflict and resolves that conflict in favor of section 11350, we respectfully disagree with *Pacific Motor* and decline to follow it.

Second, plaintiff contends that his declaratory relief claims should be permitted to proceed under section 11350 because they do not implicate section 32's "pay first" rule at all. That is because, in plaintiff's view, (1) section 32 only applies to refund actions, and refund actions deal solely with "the proper amount of the tax" (and not whether the tax was validly assessed), and (2) section 32 only applies when a taxpayer is seeking to "prevent or enjoin the collection of a *tax*," and he is alleging that the Policy and Regulation were improperly adopted, such that their "illegality" and "unconstitutionality" preclude them from resulting in a "tax" in the first place. We reject this contention in its entirety. To begin, refund actions encompass *both* the propriety of the tax imposed (the so-called "'taxability' question") as well as its amount. (*Loeffler*, *supra*, 58 Cal.4th at p. 1100.) Further, a tax is not somehow "not a tax" just because a taxpayer claims it was illegally or unconstitutionally assessed against him. Indeed, the plain text of section 32 itself says its "pay first" requirement applies when a "tax [is] claimed to be *illegal*." (Cal.

17

Const., art. XIII, § 32, italics added).  If plaintiff were correct that a challenge to the legality or constitutionality of a tax somehow deprived that tax of its status as "tax," thereby rendering section 32's "pay first" rule inapplicable, we would be essentially giving all delinquent taxpayers a blueprint for sidestepping the "pay first" rule—namely, just allege that the tax is not a tax.  We, like most courts, take a dim view of such sophistry, particularly when it would create an exception that would effectively negate the rule and grind government to a halt by depriving it of tax revenue.  (*O'Hara*, *supra*, 39 Cal.3d at p. 642 [declining to allow a taxpayer to sidestep section 32's "pay first" rule by paying just a small fraction of the outstanding tax and challenging that portion in court because the "effect" of that narrower challenge would impact the larger, unpaid balance]; see generally, *Brosnahan v. Eu* (1982) 31 Cal.3d 1, 15 [decrying statutory "end-run around a clear mandate" of the Constitution]; *Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1002 [decrying "end-run" around exclusivity rule].)

Third, plaintiff argues that he has carefully crafted the first amended complaint to be "solely a declaratory relief action," that he has specifically disclaimed any request "to prevent or enjoin the collection of any tax," and that granting his requested relief "would not compel [the Department] to take any specific action with respect to the assessment" against him.  He acknowledges that his initial complaint sought a declaration that the Policy and Regulation "not be implemented, enforced or otherwise relied upon," but now claims that his prior allegations regarding his outstanding tax assessments were "excessive detail" that was "unnecessary," "distracting" and "[ir]relevant."

We decline plaintiff's invitation to ignore the practical effect of his declaratory relief claims. As noted above, the applicability of section 32's "pay first" rule to declaratory relief claims depends on whether those claims have the "net result" or "effect" of adjudicating the plaintiff's outstanding tax liability. (*Loeffler*, *supra*, 58 Cal.4th at pp. 1101, 1128; *Woosley*, *supra*, 3 Cal.4th at p. 785; *Calfarm*, *supra,* 48 Cal.3d at p. 838; *Pacific Gas*, *supra*, 27 Cal.3d at p. 280; *O'Hara*, *supra*, 39 Cal.3d at pp. 638-640; *Modern Barber*, *supra*, 31 Cal.2d at p. 723.) Whether the existence of plaintiff's outstanding tax assessment was previously pled or is instead judicially noticed, that assessment exists, it will be affected by the adjudication of his declaratory relief claims, and that adjudication will bind the Department as it seeks to collect the unpaid assessment. We must disregard plaintiff's conclusory allegations to the contrary (*Loeffler*, at p. 1100 [on demurrer, "the reviewing court 'does not . . . assume the truth of contentions, deductions or conclusions of law'"]), and must look at the substance and effect of his claims rather than the labels he uses for them (see *Urick v. Urick* (2017) 15 Cal.App.5th 1182, 1197 ["[t]he effect of [a plaintiff's] proposed action . . . controls over the label that she gave to the remedy that she sought"]). To be blunt, one cannot plead around reality.

Lastly, plaintiff in passing suggests that denying him the right to pursue a declaratory relief claim under section 11350 without paying first, while allowing others without outstanding tax assessments to proceed, violates equal protection. Not only has plaintiff waived this argument by not sufficiently developing it (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956), but the argument also lacks merit. In general, the concept of equal protection requires the law to treat similarly

19

situated persons similarly unless there is a reason to do otherwise.  (*In re Lemanuel C.* (2007) 41 Cal.4th 33, 47.) Plaintiff's argument fails at the first step because persons who have outstanding tax assessments are not similarly situated to those who do not.  But even if we overlook this threshold deficiency, we would evaluate the constitutionality of section 11350 by asking only whether the state has a rational basis for allowing persons without outstanding tax assessments to pursue declaratory relief claims while not allowing persons with outstanding tax assessments to do so without first paying those assessments.  We do not employ a higher level of scrutiny because (1) the class of persons who wish to evade section 32's "pay first" requirement is not a "suspect class," and (2) the distinction at issue does not impinge upon a "fundamental right" because the "pay first" requirement accords with due process by granting a notice and a meaningful opportunity to be heard along with the full recompense on the back end (as any refund includes the tax *plus* interest) (*Modern Barber, supra,* 31 Cal.2d at pp. 725-726; *Aronoff v. Franchise Tax Board.* (1963) 60 Cal.2d 177, 179-180).  And what is the rational basis for requiring persons with outstanding tax assessments to "pay first"?  It is the very same reason that has animated section 32 for over a century— that is, the need to keep the "lifeblood" of tax revenue flowing to the state.  (*Loeffler, supra,* 58 Cal.4th at p. 1101; *Pacific Gas, supra,* 27 Cal.3d at p. 283; *O'Hara, supra,* 39 Cal.3d at pp. 638-639.)

*     *     *

Where an "action is barred as a matter of law, the demurrer is properly sustained without leave to amend."  (*Cal. Auto. Dismantlers Ass'n. v. Interinsurance Exch.* (1986) 180

20

Cal.App.3d 735, 742.) As discussed above, section 32 bars plaintiff's declaratory relief claims unless and until he pays the full amount of the outstanding tax assessment. He admits he has not done so, and has declined to do so even after the trial court initially gave him leave to amend solely to allege a "refund action." Accordingly, his claim is barred as a matter of law and the demurrer must be sustained without leave to amend. In light of this outcome, we have no occasion to consider the merits of plaintiff's challenges to the Policy or the Regulation.

## DISPOSITION

The petition is granted. A writ of mandate hereby issues directing the trial court to vacate its order overruling the demurrer to the first amended complaint, and to enter a new and different order sustaining the demurrer without leave to amend. This court's order staying the proceedings in the trial court is vacated. The Department is entitled to its costs incurred in this writ proceeding.

**CERTIFIED FOR PUBLICATION**.

_____, J.
HOFFSTADT

We concur:

_____, P.J.
LUI

_____, J.
CHAVEZ

21